PRENTISS WALKER, APPELLANT, v. REYNOLDS ELEC-TRICAL AND ENGINEERING COMPANY, INC., RESPONDENT.

No. 5819

April 15, 1970                                        468 P.2d 1

*Michael L. Hines* and *Henry R. Gordon,* of Las Vegas, for Appellant.

*V. Gray Gubler,* of Las Vegas, for Respondent.

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal from a judgment in favor of respondent (defendant below), in an action for breach of contract brought by appellant (plaintiff below). We affirm the judgment.

On January 15, 1963, appellant filed suit against respondent alleging that respondent, for whom appellant worked as a carpenter on the Nevada test site, unlawfully discharged appellant solely because of his race and color. Appellant further alleged that respondent had breached an agreement to re-employ appellant after a 90-day period, the agreement being in consideration of appellant's forbearance of suit. Respondent denied these allegations, claiming that appellant had been fired for cause and had not been referred to respondent by the Union Hiring Hall for rehire until February, 1963, at which time appellant was rehired. In what was claimed to be a reduction in work force, appellant was again laid off the last of March, 1963.

The matter came to trial in the Eighth Judicial District Court on September 2 and 3 and October 11, 1965, before Judge Peter Breen. After the trial, but before rendering any decision, findings, or judgment, Judge Breen died. Thereafter, the parties agreed by stipulation that the matter would be retried on the records and files, including the reporter's transcript of the previous trial. It was further stipulated that the retrial be before Judge Wright of the Fourth Judicial District

or Judge Young of the Sixth Judicial District. The stipulation was approved and it was so ordered by Judge Alvin N. Wartman of the Eighth Judicial District. No order was sought nor issued by the Chief Justice of Nevada approving the substitution of judges nor assigning Judge Wright to the Eighth Judicial District to retry this case.

On September 9 and November 8, 1968, Judge Wright retried the case in the Eighth Judicial District Court in Las Vegas. On December 18, 1968, he filed in the Eighth Judicial District Court an Opinion and Decision, and on January 3, 1969, he filed in the Eighth Judicial District Court Findings of Fact and Conclusions of Law, and Judgment signed by him in Elko on December 31, 1968. Each of these documents was entitled in and related to the Eighth Judicial District Court, and not Judge Wright's own Fourth Judicial District Court.

Appellant now contends, notwithstanding his stipulation, that Judge Wright did not have jurisdiction to hear and decide this case absent his assignment to the Eighth Judicial District Court by the Chief Justice of Nevada pursuant to NRS 3.040.[1] He concedes NRS 3.220[2] confers power upon district judges to hold court anywhere in the state, but argues that power may

---

[1]"1.  The district judges provided in NRS 3.010 shall also serve as ex officio circuit judges, and in *that* capacity shall perform such judicial duties as may be designated by the chief justice of the supreme court as hereinafter provided.

"2.  The chief justice of the supreme court shall seek to expedite judicial business and to equalize the work of the district judges, and shall provide for the assignment of any district judge to another district court to assist a court or judge whose calendar is congested, to act for a district judge who is disqualified or unable to act, or to sit and hold court where a vacancy in the office of district judge has occurred." (Emphasis added.)

[2]"The district judges shall possess equal co-extensive and concurrent jurisdiction and power. They each shall have power to hold court in any county of this state. They each shall exercise and perform the powers, duties and functions of the court and of judges thereof and of judges at chambers. The decision in an action or proceeding may be written or signed at any place in the state by the judge who acted on the trial and may be forwarded to and filed by the clerk, who shall thereupon enter judgment as directed in the decision, or judgment may be rendered in open court, and, if so rendered, shall be entered by the clerk accordingly. *If the public business requires, each judge may try causes and transact judicial business in the same county at the same time.* Each judge shall have power to transact business which may be done in chambers at any point within the state, and court shall be held in each county at least once in every 6 months and as often and as long as the business of the county requires. *All of this section is subject to the provision that each judge may direct and control the business in his own district and shall see that it is properly performed."* (Emphasis added.)

be exercised only after formal assignment. He next contends the stipulation erroneously agreed for the case to be retried in the Fourth or Sixth Judicial District Courts. Finally, he contends Judge Wright failed to consider or rule upon the issue whether the parties had agreed that appellant would be eligible for rehire after a 90-day period. None of the errors urged by appellant have merit.

1. In 1885 a statute was enacted making the entire state one judicial district. Section 4 of ch. 56, [1885] Stats. of Nev. 60 reads: "The District Judges shall possess equal, co-extensive and concurrent jurisdiction and power. They shall each have power to hold court in any county of this State. They shall each exercise and perform the powers, duties and functions of the Court, and of Judges thereof, and of Judges at chambers. If the public business requires, each Judge may try causes and transact judicial business in the same county at the same time."

In State ex rel. Coffin v. Atherton, 19 Nev. 332, 345–46, 10 P. 901 (1886), Section 4 of the 1885 Act was interpreted and explained by the court as follows: "Having made one district, and provided for the election of three judges therein, it was necessary to insert this section so as to give the judges, as was given in the constitution to the three judges in Storey county, 'co-extensive and concurrent jurisdiction' throughout the entire state, and to make certain the point, which might otherwise be disputed, that although there were three judges in one district, it only required one judge to constitute a court." (Emphasis added.)

In 1895, the 1885 Act was amended,[3] and that part relevant here continues unchanged to the present as NRS 3.220.

The 1895 Act was construed and interpreted by this court on the power of one district judge to act as judge of another district in Twaddle v. Winters, 29 Nev. 88, 85 P. 280 (1906). According to that case, Judge Curler of the Second Judicial District Court entered an order in the minutes " 'that all business and all cases and proceedings that have not been completed or in the process of completion, and all new business that may be brought before the court during the absence of the presiding judge, be referred to Judge M. A. Murphy, of the First Judicial District Court of the State of Nevada, and that he be requested to try, determine, and dispose of all cases and business now before the court in the absence of the judge of this district.' " 29 Nev. at 96. (Emphasis added.) Pursuant to this request, Judge Murphy sat on the bench in Reno and

---

[3]Ch. 59, [1895] Stats. of Nev. 56.

later, in his own chambers at Carson City, issued an order granting additional time in which to file a notice and motion for a new trial. When the validity of that order was challenged, this court said, applying what is now NRS 3.220, that Judge Murphy could have made the order if he had been on the bench in Reno, and, since the order was one that could be made in chambers, it could be made anywhere in the state. See also Roberts M. & M. Co. v. District Court, 56 Nev. 299, 50 P.2d 512 (1935), construing the same statute (now NRS 3.220).

Thereafter, NRS 3.040[4] was enacted in 1955. Appellant claims NRS 3.040 limits or restricts NRS 3.220. We disagree and hold that the two statutes, when carefully examined, can each be given effect in harmony with the other.

2. NRS 3.220 grants co-extensive, equal power and jurisdiction to every district judge to sit in any county in this state any time he is called upon, is needed, or consents to serve. This statute recognizes the judicial business of this state is fluid and ever changing, and it provides a statewide reservoir of judicial manpower which can be shifted with ease and without question of authority the length and breadth of this vast state as the public business requires. Historically, and long before enactment of NRS 3.040, district judges carried out the provisions of NRS 3.220 in responsibly administering the judicial business of Nevada, without specific, formal or written orders from the chief justice. In fact, a great tradition has developed among district judges that they will not refuse a request or call to sit in another county unless the judicial obligations in their home county absolutely preclude response. The practice of assigning cases by a disqualified judge of one county to a judge of another county, without necessity of an order from the chief justice is sanctioned by statute. See NRS 1.230(5). Parties to an action in which there is a disqualification are entitled to be heard and urge their objection before the case is "assigned to another [convenient] judge." NRS 1.240.

NRS 3.040 was obviously enacted as a supplement to NRS 3.220 to give the chief justice clear statutory authority to order assignments of district judges from one county to another to aid and attempt to further improve the administration of judicial business in Nevada. There was obviously little or no effective coordination of assignments of judges from one county

---

[4]Ch. 440, § 5, [1955] Stats. of Nev. 917.

to another in a state-wide effort to expedite judicial business and equalize the caseload. Clearly, the legislature intended the chief justice to have specific statutory power, in addition to his broad, inherent, constitutional power, to assist and direct the district judges in the most effective state-wide use of their limited manpower. While it is unthinkable a district judge would arbitrarily refuse a request to sit in another county when his own calendar permitted it, under NRS 3.040, the chief justice could compel him to serve by proper order. So too, if a particular trial were greatly protracted or burdensome because of the issue to be tried, the chief justice could draw up a plan involving some or all the judges of the state and order assignments to permit effective and efficient handling of the judicial business of one or all the counties of the state. The number of situations which could be cited demonstrating the operation of NRS 3.040 as a supplement to NRS 3.220 are almost endless. We therefore hold the two statutes can be given simultaneous effect without conflict and in *pari materia.* See 2 Sutherland Statutory Construction § 5201 (3d ed. 1943).

3.   We see no merit to appellant's contention that the stipulation was void because it purported to assign the cause to the Fourth or Sixth Judicial District Courts. The phrases "in and for the ................ Judicial District Court, .......................... Nevada" contained in the stipulation modify "District Judge" and are part of the judge's title, not an indication of change of venue.

4.   Judge Wright in his opinion and decision of December 18, 1968, listed the first issue to be decided as, "Did defendant agree to hire plaintiff 90 days after March 2, 1962?" Further issues listed were, "Did the defendant permanently discharge plaintiff," and, "If the defendant discharged plaintiff permanently, can the plaintiff recover damages?"

In his Findings of Fact and Conclusions of Law filed January 3, 1969, Judge Wright found that, "a letter of intent or statement of status was signed on March 2, 1962, by the plaintiff and the defendant wherein the following words were used, to-wit: 'finally, Mr. Crocker (for defendant) and Mr. Walker, (plaintiff) mutually agree that it would be appropriate for a waiting period of ninety (90) days to elapse before Mr. Walker regains his eligibility for employment with the Company.'

"The Court finds that the above was not an agreement based upon valuable consideration but was in the nature of a statement or memorandum and that the defendant did not agree that at the end of 90 days that defendant would employ plaintiff but the parties did mutually agree that such was a memorandum and not an agreement."

He further found, "That plaintiff has never been permanently fired by the defendant but plaintiff is still carried by the defendant as eligible for employment and without any discrimination."

It is obvious the lower court did consider the matter of rehiring plaintiff after 90 days and found against him.[5]

Judgment affirmed.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.

---

[5]No issues were raised whether the findings were erroneous or not based upon substantial evidence. We express no opinion upon those points.