JAY SERRETT, Appellant, *v.* SHAYNE M. KIMBER and LIBERTY MUTUAL FIRE INSURANCE COMPANY, Respondents.

No. 23938

May 19, 1994                                874 P.2d 747

*Robison, Belaustegui, Robb & Sharp,* Reno, for Appellant.

*Hamilton & McMahon,* Reno, for Respondents.

## OPINION

*Per Curiam:*

This single issue appeal requires us to determine if an anti-stacking provision complies with the requirements of NRS 687B.145(1), thereby preventing appellant from stacking his uninsured motorist coverages. For the reasons explained hereafter, we are persuaded that the district court erred when it found that the subject provision complied with the statute and that respondents Shayne Kimber and Liberty Mutual Fire Insurance Company (hereafter collectively "Liberty") were entitled to summary judgment as a matter of law.

### FACTS

Appellant Jay Serrett was seriously injured in an automobile accident caused by an uninsured motorist. At the time of the accident, Serrett was insured by Liberty. Serrett's insurance policy provided coverage for a 1977 Oldsmobile and a 1983 Peugeot, with uninsured motorist ("UM") coverage of $100,000 per person and $300,000 per accident. The declaration page

attached to the policy indicates that Serrett may have paid two separate premiums for UM coverage.[1]

Serrett's original policy contained the following "anti-stacking" provision:

### PART C—UNINSURED MOTORISTS COVERAGE
****
LIMIT OF LIABILITY

A.  The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
1.  Insureds;
2.  Claims made;
3.  Vehicles or premiums shown in the Declarations; or
4.  Vehicles involved in the accident.

Prior to the accident in which Serrett sustained his injuries, Liberty amended Serrett's policy by endorsement No. PP 01820288, which simply republished the original anti-stacking provision in larger, bold-faced print. The cost of Serrett's injuries exceeded the "per person" limit of one policy and Serrett requested that the UM coverages on his two vehicles be stacked. Liberty refused in light of the anti-stacking provision and denied all liability in excess of $100,000.

Serrett commenced an action in the district court, to which Liberty responded with a motion for summary judgment. After a hearing on the motion, the district court granted summary judgment, ruling that the UM coverages were not subject to stacking. This appeal followed.

### DISCUSSION

Because, on summary judgment, this court reviews "the entire record anew and without deference to the findings of the district court, in that sense our review is *de novo*." Caughlin Homeowners Ass'n v. Caughlin Club, 109 Nev. 264, 266, 849 P.2d 310, 311 (1993). A party is entitled to summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. NRCP 56(c). Where, as here,

---

[1]The annual premiums are explained as follows:

| Liability; Medical Payments; Uninsured/Underinsured Coverage | Coverage for Damage to Auto | TOTAL |
|---|---|---|
| Oldsmobile............................ $414.00 | $149.00 | $563 |
| Peugeot................................... $322.00 | $287.00 | $609 |

neither party disputes any material fact, the construction of an insurance policy is reviewed solely as a question of law. Nationwide Mut. Ins. v. Moya, 108 Nev. 578, 582, 837 P.2d 426, 428 (1992). Moreover, any ambiguities in the policy will be construed against the insurer and in favor of the insured. National Union Fire Ins. v. Reno's Executive Air, 100 Nev. 360, 365, 682 P.2d 1380, 1383 (1984).

Prior to 1979, we regularly invalidated anti-stacking provisions and allowed insureds to combine their coverage limits on separate policies. Bove v. Prudential Insurance Co., 106 Nev. 682, 685, 799 P.2d 1108, 1110 (1990). In 1979, however, the legislature enacted NRS 687B.145(1),[2] which provided the means whereby insurance companies could prevent the stacking of UM coverages. Now, efficacious anti-stacking provisions must be expressed in clear language and be prominently displayed in the "policy, binder or endorsement." Additionally, the insured must not have purchased separate coverage on the same risk or paid a premium calculated for full reimbursement to the insurer under that coverage. NRS 687B.145(1); Neumann v. Standard Fire Ins., 101 Nev. 206, 209, 699 P.2d 101, 103 (1985). We now consider whether the anti-stacking provision at issue meets the requirements enunciated by NRS 687B.145(1).

A. *The clarity requirement*

An anti-stacking provision must not only be clearly written, it must not be "difficult to understand." Neumann, 101 Nev. at 210, 699 P.2d at 104. Indeed, if the clarity prong of NRS 687B.145(1) is to serve any purpose, it must be *"truly comprehensible to the average insured."* Torres v. Farmers Ins. Exchange, 106 Nev. 340, 347, 793 P.2d 839, 843 (1990). Serrett concedes that the instant provision is expressed in clear language,

---

[2]NRS 687B.145(1) provides as follows:

1. Any policy of insurance or endorsement providing coverage under the provisions of NRS 690B.020 or other policy of casualty insurance may provide that if the insured has coverage available to him under more than one policy or provision of coverage, any recovery or benefits may equal but not exceed the higher of the applicable limits of the respective coverages, and the recovery or benefits must be prorated between the applicable coverages in the proportion that their respective limits bear to the aggregate of their limits. *Any provision which limits benefits pursuant to this section must be in clear language and be prominently displayed in the policy, binder or endorsement. Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage.*

(Emphasis added.)

yet he relies upon *Neumann* in arguing that "mislettering and mislabelling" between the original policy and any amendment to the policy make the provision ambiguous and difficult for a layperson to understand. We disagree.

In *Neumann* we declared that an otherwise clear anti-stacking provision may be rendered unclear if an amendment to the provision incorrectly references the amended language of the original policy and causes "confusion rather than clarification." *Neumann*, 101 Nev. at 210, 699 P.2d at 104. The amendment in *Neumann* was confusing because it referred its readers to nonexistent sections and mislabeled paragraphs in the original policy and justifiably caused the insured to conclude that it did not apply to his policy. *Id.* In contrast, there is nothing in the instant amendment that could lead Serrett to conclude that it did not apply to his policy, nor would the amendment create confusion for the average layperson. Although the original policy and amendment are organized differently, the amendment correctly identifies the affected provisions of the policy and leaves no doubt as to its purpose or effect.[3] Thus, the amendment complies with the clarity requirement.

## B.  *The prominence requirement*

An anti-stacking provision must be more prominently displayed than other provisions of an insurance policy or amendment; otherwise, the prominence requirement of NRS 687B.145(1) would be ineffectual. We have earlier held that a provision is sufficiently prominent if it is "different from its surrounding terms." *Neumann*, 101 Nev. at 211, 699 P.2d at 105; *see also* Bove v. Prudential Ins. Co., 106 Nev. 682, 687, 799 P.2d 1108, 1111 (1990) ("the clause must direct the reader's attention toward the critical language, and 'have greater prominence than other provisions'"). The prominence requirement is necessary to "make more apparent to a policy holder those provisions which may have an adverse effect on a claim under the policy, and to give him notice of his true coverage." *Neumann*, 101 Nev. at 210, 699 P.2d at 104 (citing John A. Glenn, Annota-

---

[3]For example, the "LIMIT OF LIABILITY" Section is marked by an "A" in the original policy and a "D" in the amendment; nonetheless, the amendment immediately reconciles the inconsistency by the following explanation:

> D.  Paragraph A. of the Limit of Liability provision is replaced by the following:
> . . . .

tion, *Validity and Construction of Statutes Relating to Style or Prominence With Which Provisions Must be Printed in Insurance Policy,* 36 A.L.R. 3d 464, 469 (1971)).

The anti-stacking provision in the instant amendment was printed in bold-faced, large letters and was conspicuously different from the balance of the amendment. In fact, the sole purpose of the amendment was to bring the provision into conformity with the prominence requirement of NRS 687B.145(1).[4] Nevertheless, Serrett challenges the adequacy of the amendment's prominence because two other exclusionary provisions (regarding liability and medical payments) in the amendment are printed in the same bold-faced, large style. The existence of two other anti-stacking provisions, which are virtually identical to the UM provision in substance and style, does not diminish the prominence of any one of them. To the contrary, we conclude that the three prominently displayed provisions call attention to themselves to no lesser degree than if only one of the provisions existed in the policy. The anti-stacking provision at issue here clearly satisfies the prominence requirements of NRS 687B.145(1).

## C. *The single premium requirement*

Having concluded that the amendment was both clear and prominent, we must now determine whether Serrett purchased separate coverage for the same uninsured motorist risk and paid a premium calculated for full reimbursement under that coverage. The burden of proving that Liberty did not violate the third prong of the test for avoiding the imposition of stacking rests with Liberty, who has virtually sole access to the relevant documents and possesses the expertise needed to explain and justify its premiums. In short, much if not all of the essential evidentiary material relevant to this issue is in Liberty's control. *See Bove,* 106 Nev. at 688, 799 P.2d at 1112.

Serrett contends that when he purchased insurance coverage from Liberty he intended to receive full uninsured motorist coverage on each of his vehicles, and that he was never informed that his premiums were calculated in a way that would preclude stacking. Additionally, the declaration page attached to Serrett's

---

[4]The amendment contained the following prefatory language:

NOTICE

The contrasting boldface type contained in this endorsement is in compliance with the Nevada statutory requirements that ''anti-stacking'' provisions be prominently displayed in the policy, binder or endorsement.

policy indicates that Serrett may have been charged separate premiums for uninsured motorist coverage on each of his vehicles. Liberty opposes Serrett's contention by use of an affidavit from one of its employees, which states in pertinent part:

> In the specific policy of Jay Serrett and Helen Serrett, [Liberty] did not sell a separate policy of uninsured/underinsured motorist coverage. Rather, Liberty Mutual Insurance Company, in accord with its position that Nevada is a non-stacking state, charges a flat rate for uninsured/underinsured motorist coverage.

> Accordingly, [Liberty] did not sell Jay Serrett two separate coverages for uninsured/underinsured motorist coverage based upon a premium calculated to return a full payment for each person or accident.

> In other states, specifically Florida, the insured may elect to receive a stacking of uninsured motorist coverage. In such instances, [Liberty] has created a separate premium purchase price for each of the separate risks. The premium in those specific instances is charged for a full payment of all of the benefits per person and per accident. That specific premium is not a part of the [Liberty] policies and underwriting in Nevada.

We have found no evidence that Serrett was charged a "flat rate" for UM coverage, nor are we persuaded that such a rate, without additional evidence, would be dispositive of this issue.

Although Liberty attempted to explain the actuarial basis for its premiums during oral argument, it relied upon the above affidavit as its sole evidence that Serrett did not purchase separate coverage for the same risk for which he paid a premium calculated to provide full reimbursement under that coverage. Given the rather arcane or cryptic justification for Liberty's billing, as presented to the district court and on appeal, we are compelled to conclude that summary judgment was improper.[5] Our decision in *Bove* contemplates the introduction of *actual evidence* that is possessed by the insurer. Thus, something more than an unsupported affidavit from a Liberty employee is required to meet the third require-

---

[5]We do not mean to imply that the position asserted by Liberty is not justified. Nor do we pretend to understand what hoops an insurer may have to jump through in order to provide lucid proof of the basis for its charges in these types of cases. We must assume, however, that insurance companies do have a statistical formula and rationale for the charges billed to their insureds in cases where multiple vehicles are covered. We trust that Liberty will be in a position, with some effort, to provide cogent, understandable evidence justifying its charges if indeed such charges are supportable under Nevada law.

ment of NRS 687B.145(1). *See also* Clauson v. Lloyd, 103 Nev. 432, 743 P.2d 631 (1987) (holding that a self-serving affidavit will not support summary judgment); Catrone v. 105 Casino Corp., 82 Nev. 166, 171, 414 P.2d 106, 109 (1966) (affidavits are ineffective when they state "conclusion[s] without factual support in the record").

## CONCLUSION

The anti-stacking provision is clearly written and prominently displayed. However, Liberty failed to meet its burden of proof with respect to whether Serrett purchased separate coverage for the same risk and paid a premium calculated to provide Liberty full reimbursement for the separate coverage. Therefore, the summary judgment is reversed and the matter is remanded for further proceedings consistent with the concerns expressed in this opinion.