THE ESTATE OF BRIAN J. DELMUE, AL L. DELMUE
AND THE ESTATE OF JEANIE DELMUE, APPEL-
LANTS, *v.* ALLSTATE INSURANCE COMPANY AND
DAVID A. BARKMAN, RESPONDENTS.

No. 27625

March 27, 1997
936 P.2d 326

*McDonald, Carano, Wilson, McCune, Bergin, Frankovich & Hicks,* Reno, for Appellants.

*Burton, Bartlett and Glogovac,* Reno; and *Jones & Dyer,* Sacramento, CA, for Respondents.

*Leverty & Associates Law Chtd.* and *Matthew L. Sharp,* Reno, for Amicus Curiae Nevada Trial Lawyers Association.

## OPINION

*Per Curiam:*

Appellant Al L. Delmue ("Mr. Delmue") had two teenage sons; one was sixteen years old and the other fifteen. In 1989, he was concerned that his existing automobile insurance was inadequate to cover any potential loss that his sons might incur while operating an automobile.[1] Accordingly, Mr. Delmue approached respondent Allstate Insurance Company ("Allstate") through its agent, Gene Gardella ("Gardella"), to increase his automobile insurance coverage. Although Mr. Delmue currently had a policy with liability limits of $100,000 per person/$300,000 per occurrence and uninsured/underinsured ("UM/UIM") motor vehicle insurance coverage with a maximum limitation of $100,000 per person/$300,000 per occurrence, Gardella recommended that Mr. Delmue purchase a $1,000,000 personal umbrella policy. At no time during the acquisition of the umbrella policy did Gardella or Allstate offer Mr. Delmue UM/UIM motorist coverage.

The language of the umbrella policy relevant to the coverage of automobiles stated:

> **Coverage—When We Pay**
> **Allstate** will pay when an **insured** becomes legally obligated to pay for **personal injury** or **property damage** caused by an **occurrence.**
>
> **Personal Activities**
> Coverage applies to an **occurrence** arising only out of:
> . . .
> 3.  *the occupancy of a land vehicle,* aircraft or watercraft by an insured for personal transportation. Occupancy of any such conveyance while being used in any way directly related to an **insured's business** or **business property** is not covered.

(Emphasis added.) The policy covered Mr. Delmue's three automobiles and two teenage sons.

On February 14, 1992, fifteen-year-old Brian J. Delmue ("Brian") was a passenger in the automobile of sixteen-year-old David A. Barkman ("Barkman"). As Barkman was driving east

---

[1]In his deposition testimony, Mr. Delmue explained his reasons for increasing his policy limits as follows:

> My concern was [my son] Jason was 16 and driving, and I was just concerned that the coverage I had on my existing insurance was not sufficient, and just worried that he could get in some type of an accident, and that my investments and home and property and everything just weren't covered.

on McCarran Boulevard, he lost control of his vehicle, swerved off the road, and rolled his Ford Bronco several times. As a result, Brian was ejected from the car and killed. At the time of Brian's demise, Mr. Delmue's primary automobile insurance policy and the umbrella policy were in effect.

A complaint was filed by appellants the Estate of Brian J. Delmue, Al L. Delmue, and the Estate of Jeanie Delmue ("Delmue") against Barkman and Allstate. In September 1993, Barkman entered into a settlement agreement with Delmue. Delmue received $285,000 of Barkman's $300,000 single limit bodily injury liability coverage.[2] Delmue also received a $100,000 payment from Allstate under its existing UIM automobile insurance policy. Thus, Delmue received a total of $385,000 for the wrongful death of Brian. However, Delmue claims that it suffered damages in excess of Barkman's coverage and Delmue's own UIM automobile coverage. Accordingly, Delmue seeks an additional $1,000,000 in damages from Allstate by virtue of the umbrella policy.

Delmue alleges that NRS 687B.145(2)[3] required Allstate to offer UM/UIM coverage equal to its $1,000,000 umbrella policy limit. Delmue argued to the district court that the failure of Allstate to comply with this mandate necessitates reformation of the umbrella policy to include $1,000,000 in UM/UIM motorist coverage. The district court, however, held that the umbrella policy is not "motor vehicle insurance coverage within the meaning of Nevada's uninsured motorist statute, specifically, NRS 687B.145(2)." Accordingly, the district court granted Allstate's summary judgment motion and denied Delmue's motion for summary judgment. Delmue appeals, contending that the district court erred in its interpretation of NRS 687B.145(2).

Since this court's review of summary judgment orders is de novo, the entire record below is reviewed anew and without deference to the findings of the district court. Serret v. Kimber, 110 Nev. 486, 488, 874 P.2d 747, 749 (1994); Joynt v. California Hotel & Casino, 108 Nev. 539, 541, 835 P.2d 799, 800 (1992).

---

[2]The other $15,000 of Barkman's $300,000 policy went to another passenger in the vehicle.

[3]In relevant part, NRS 687B.145(2) provides:

Insurance companies transacting motor vehicle insurance in this state *must offer,* on a form approved by the commissioner, *uninsured and underinsured vehicle coverage* in an amount equal to the limits of coverage for bodily injury sold to an insured *under a policy of insurance covering the use of a passenger car.*

(Emphasis added.)

Further, summary judgment should only be entered when there are no genuine issues of material fact and the moving party is entitled to an expedited judgment as a matter of law. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 665 (1985).

"Where, as here, neither party disputes any material fact, the construction of an insurance policy is reviewed solely as a question of law." *Serret,* 110 Nev. at 488-89, 874 P.2d at 749. Any ambiguities in the insurance contract must be construed against the insurer and in favor of the insured. *Id.* Similarly, this court has previously held that it will "strictly construe provisions of an uninsured motorist statute in favor of recovery by the insured." Ippolito v. Liberty Mutual, 101 Nev. 376, 378-79, 705 P.2d 134, 136 (1985).

Delmue argues that the language of NRS 687B.145(2) is clear and unambiguous. As such, this court must not go beyond the plain language of the statute to determine its intent. *See* Cirac v. Lander County, 95 Nev. 723, 729, 602 P.2d 1012, 1015 (1979). For the purposes of the instant matter, Delmue further asserts that the plain language of NRS 687B.145(2) contains five separate elements: "[1] Insurance companies [2] transacting motor vehicle insurance in this state [3] must offer . . . [4] uninsured and underinsured vehicle coverage . . . [5] to an insured under a policy of insurance covering the use of a passenger car." Through Allstate's own admissions and the plain meaning of NRS 687B.145(2), Delmue maintains that all five requirements are satisfied in this case. We agree.

Allstate admits that it is an insurance company which was transacting motor vehicle insurance in Nevada at the time this lawsuit arose. Allstate further admits that it did not offer UM/UIM coverage at the time it sold the umbrella policy to Delmue. Finally, the umbrella policy states that "[c]overage applies to an occurrence arising only out of . . . (3) the occupancy of a land vehicle." In other words, the phrase "land vehicle" speaks euphemistically for an automobile.

The plain language of NRS 687B.145(2), specifically the phrase, "a policy of insurance covering the use of a passenger car," does not distinguish between primary automobile coverage policies and umbrella policies, as Allstate asserts. Here, the umbrella policy sold to Delmue which protects against loss "arising out of the occupancy of a land vehicle," certainly "cover[s] the use of a passenger car."[4] Accordingly, we conclude that

---

[4]There can be little doubt that the umbrella policy provided a type of coverage for the use of a passenger vehicle. For example, the umbrella policy

automobile liability insurers writing umbrella policies covering motor vehicles in this state must offer UM/UIM motorist coverage in compliance with NRS 687B.145(2). This is consistent with our prior pronouncements in *Serret* and *Ippolito.*

Thus, as in *Ippolito,* when an insurance company fails to comply with NRS 687B.145(2), this court will "imply into the policy's provisions the increased protection afforded . . . by NRS 687B.145(2)." *Ippolito,* 101 Nev. at 379, 705 P.2d at 136. Despite its plain language, Allstate contends that NRS 687B.145(2) must be read in conjunction with Nevada's Motor Vehicle Safety Responsibility Act ("Act"), NRS 485.010 et seq., because the Act first mandated the acquisition of UM/UIM coverage. Allstate notes that section 485.055 of the Act defines "motor vehicle insurance" while expressly excluding excess insurance: "With respect to a policy which grants excess or additional coverage over that required by NRS 485.3091, *the term 'motor vehicle liability policy' applies only to that part of the coverage which is required by NRS 485.3091.*" (Emphasis added.) Therefore, Allstate claims that since NRS 485.010 et seq. is so closely related to NRS 687B.145(2), they must be construed in *pari materia* and the exclusionary language in NRS 485.055 applied to NRS 687B.145(2).[5] *See* Walker v. Reynolds Elec. & Eng'r Co., 86 Nev. 228, 233, 468 P.2d 1, 4 (1970) (holding that statutes in *pari materia* must be considered together).

Ironically, Allstate's argument favors Delmue. If the legislature had the foresight to provide an express exception to excess insurance coverage in NRS 485.055, then it is only logical that the same would be provided in NRS 687B.145(2) if the legislature so intended. *City of Boulder,* 101 Nev. at 118-19, 694 P.2d at 500 (holding that legislature is presumed to have full knowledge of existing statutes relating to the same topic). Moreover, neither NRS 485.055 nor NRS 687B.145(2) expressly incorporates the other by reference. As this court stated in McKay v. Board of Cty. Comm'r, 103 Nev. 490, 492, 746 P.2d 124, 125 (1987):

> [I]t is important to note with respect to the first proposition, the implied exception argument, *that it is not the business of this court to fill in alleged legislative omissions* based on

---

invoice sent by Allstate to Delmue specifically noted under the $285 premium balance column that:
  PREMIUM INCLUDES A CHARGE FOR 3 AUTOMOBILES
  PREMIUM INCLUDES A CHARGE FOR A YOUNG DRIVER

[5]Allstate also cites persuasive authority to support its contentions. *See* Jalas v. State Farm Fire & Casualty Co., 505 N.W.2d 811 (Iowa 1993). However, we are reluctant to rely on other jurisdictions' treatment of this issue. Many of those decisions turn on the discrete wording of the relevant statutes and insurance policies.

conjecture as to what the legislature would or should have done. . . . To imply an exception in the face of this straightforward language would be in direct opposition to the expressed legislative intent.

(Emphasis added.)

Accordingly, we conclude that the rules of statutory construction and legislative intent, when applied to NRS 687B.145(2), require insurance companies to offer UM/UIM coverage when the policy sold to the insured "cover[s] the use of a passenger car."

Finally, Allstate requests that this court exercise its powers to abrogate the plain meaning of the statute and honor the true intent of the legislature. A court may look beyond the plain meaning of a statute only if it violates the intent of the act or defeats the legislative policy behind the statute. *Department of Motor Vehicles & Public Safety v. Lovett,* 110 Nev. 473, 477, 874 P.2d 1247, 1250 (1994); *McKay v. Bd. of Supervisors,* 102 Nev. 644, 648, 730 P.2d 438, 441 (1986). Thus, this court may not hold that NRS 687B.145(2) has a meaning contrary to its plain language unless the court is effectuating its true intent. *Lovett,* 110 Nev. at 477, 874 P.2d at 1250. However, we conclude that the plain meaning of NRS 687B.145(2) is in harmony with the legislature's intent.

There are compelling public policy arguments which favor umbrella policies being subject to the requirements of NRS 687B.145(2). The first is to give effect to the desires of the insured. *Ippolito,* 101 Nev. 378-79, 705 P.2d at 136-37. Additionally, while Mr. Delmue may only have been concerned with protection of his estate from increased exposure to liability arising from his adolescent sons' use of the family motor vehicles, the statute articulates a well established policy requiring that automobile insurers offer coinciding UM/UIM motorist protection when liability coverages are created or raised. Without the offer, the insured may never become aware of the option to buy additional coverage, an option that the legislature has determined to be of vital importance to the insurance consumer. Further, there would seem to be no purpose in exempting umbrella policies from NRS 687B.145(2) when a simple increase in coverage of the basic underlying limits would have implicated this statutory requirement.

Accordingly, we reverse the district court's order and remand this matter with instructions that judgment be entered in favor of Delmue.