122 F.3d 1073
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eugene MURPHY; Tamiyo Murphy, Plaintiffs-Appellees,
v.
ALLSTATE INSURANCE COMPANY, et al., Defendant-Appellant.
 No. 94-16129.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted July 14, 1997.
Decided Sept. 2, 1997.
 
 1
 Appeal from the United States District Court for the District of Nevada Mary Johnson Lowe, Senior Judge, Presiding
 
 
 2
 Before: HALL, WIGGINS, Circuit Judges and SHADUR, District Judge**.
 
 
 3
 MEMORANDUM*
 
 
 4
 Joseph Murphy was killed in an automobile accident in Las Vegas, Nevada. His parents ("the Murphys") sued Allstate Insurance Company after Allstate refused to pay them under their personal umbrella policy. Following a bench trial, the district court entered judgment of almost $400,000 plus interest in favor of the Murphys. Allstate appeals.
 
 I. Section 687B.145(2)
 
 5
 Allstate contends that Nev.Rev.Stat. § 687B.145(2)'s "must offer" requirement does not apply to the Murphys' personal umbrella policy. As it read in 1989, § 687.145(2) provided:
 
 
 6
 Insurance companies doing business in this state must offer uninsured motorist coverage equal to the limits of bodily injury coverage sold to the policyholder. Uninsured motorist coverage must include a provision which enables the insured to recover up to the limits of his own coverage any amount of damage for bodily injury from his insurer which he is legally entitled to recover from the owner or operator of the other vehicle to the extent that these damages exceed the limits of the bodily injury coverage carried by that owner or operator.
 
 
 7
 The Nevada Supreme Court has never decided whether this provision's must-offer requirement applies to personal umbrella policies. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." DeSoto v. Yellow Freight Systems, Inc., 557 F.2d 655, 658 (9th Cir.1992) (quoting Dimidowich v. Bell & Howell, 803 F.2d 1473, 1482 (9th Cir.1986)).
 
 
 8
 We are guided in this inquiry by the Nevada Supreme Court's recent decision in Delmue v. Allstate Ins. Co., 936 P.2d 326 (Nev.1997). Delmue held that the must-offer requirement contained in the current version of § 687.145(2) applies to personal umbrella policies. Id. at 329.
 
 
 9
 While we may not agree with Delmue 's reasoning, its holding provides clear guidance as to how the Nevada Supreme Court would decide the present case. Although the language of the former § 687.145(2) is slightly different, it is almost inconceivable that these differences in language would cause the Nevada Supreme Court to reach a different result. Relying on Delmue, we hold that the must-offer requirement of the former § 687.145(2) applies to the Murphys' personal umbrella policy with Allstate. Thus, the district court correctly concluded that uninsured/underinsured motorist coverage must be read into the Murphys' personal umbrella policy because Allstate failed to offer such coverage when the policy was issued.
 
 
 10
 II. The "Required Underlying Insurance" Offset
 
 
 11
 Similarly, we are not persuaded that the Nevada Supreme Court would give Allstate an $85,000 offset as a result of the Murphys' decision to carry lower uninsured/underinsured motorist coverage under their automobile insurance policy. If we were able to write on a blank slate, Allstate's argument that the Murphys should be held to the implications of their choice to purchase lower coverage limits of $15,000/$30,000 in their automobile liability policy has considerable force. See, e.g., Washam v. Chancellor, 507 So.2d 806 (La.1987). While not specifically mentioning uninsured/underinsured motorist coverage, Allstate's policy provided that the Murphys had to maintain bodily injury coverage in their automobile liability policy of $100,000. Nevada law required Allstate to offer uninsured/underinsured motorist coverage in an amount equal to the bodily injury coverage in the Murphys' automobile policy. Allstate did so, but the Murphys decided to forego the additional $85,000 in uninsured/underinsured motorist coverage. We are inclined to agree with Allstate that the Murphys should face the consequences of that choice.
 
 
 12
 However, we must predict how the Nevada Supreme Court would resolve this issue. The Nevada Supreme Court has gone to great lengths to hold in favor of the insureds in this type of uninsured/underinsured motorist cases, invoking in each case the rule that the uninsured motorist statute must be strictly construed in favor of the insured. See Delmue, 936 P.2d at 328; Ippolito v. Liberty Mut. Ins. Co., 705 P.2d 134, 136 (Nev.1985). We believe that the Nevada Supreme Court would note that the "Required Underlying Insurance" provision of the Murphys' umbrella policy does not specifically require $100,000 in underlying uninsured/underinsured motorist coverage. Accordingly, we predict that the Nevada Supreme Court would hold in favor of the Murphys on this issue.
 
 
 13
 III. Challenges to the District Court's Factual Findings
 
 
 14
 Allstate argues that there was insufficient evidence to support the district court's findings that: (1) Joseph Murphy was a resident of the Murphys' household at the time of the accident; (2) Rene Esteves was driving at the time of the accident; and (3) Joseph Murphy did not act negligently when he got into the automobile which Esteves was driving. We review the district court's findings with respect to all three of these issues for clear error.[1] We will accept the district court's findings of fact unless we are left with the definite and firm conviction that a mistake has been committed. Snow v. Standard Ins. Co., 87 F.3d 327, 331 (9th Cir.1996). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Service Employees Int'l Union v. Fair Political Practices Comm'n, 955 F.2d 1312, 1317 n. 7 (9th Cir.1992) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985)).
 
 
 15
 Although Allstate presented some evidence which tended to show that Joseph did not intend to return to the Murphy residence, other evidence introduced at trial tended to show that Joseph's absence from the Murphy household was the temporary result of a dispute between a high school senior and his father. Similarly, although there may be some reason to be skeptical of Curtis's testimony that Esteves was driving the vehicle when it left her apartment, the district court's account of the evidence is not implausible. Last, at least some evidence introduced at trial tends to show that Joseph may not have been aware of Esteves's intoxicated condition when they left the party. As a result, we do not conclude that the district court clearly erred with respect to any of these three factual findings.
 
 
 16
 IV. The District Judge's Alleged Bias and Lack of Impartiality
 
 
 17
 Finally, Allstate contends that it was denied its right to a fair trial because Judge Lowe was predisposed in favor of the Murphys. To support this claim, Allstate points to Judge Lowe's conduct during its closing argument and examination of certain witnesses. A review of the entire record, however, reveals nothing more than a vigorous judicial presence in the courtroom punctuated by several exchanges between Judge Lowe and Allstate's counsel. Nothing in the record indicates that Judge Lowe based her decisions on any sort of bias or partiality. Allstate's claim of judicial bias is unfounded.
 
 
 18
 The judgment of the district court is AFFIRMED.
 
 
 
 **
 Hon. Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 We review the issue of Joseph Murphy's residence for clear error even though it presents a mixed question of law and fact because the inquiry is "essentially factual." United States v. McConney, 728 F.2d 1195, 1203 (9th Cir.1984) (en banc)