137 Nev., Advance Opinion 32

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| FILIPPO SCIARRATTA, AN INDIVIDUAL, Appellant, vs. FOREMOST INSURANCE COMPANY GRAND RAPIDS MICHIGAN, A MICHIGAN CORPORATION; MID-CENTURY INSURANCE COMPANY, A CALIFORNIA CORPORATION; AND FARMERS INSURANCE EXCHANGE, A CALIFORNIA INTER-INSURANCE EXCHANGE, Respondents. | No. 79604 FILED JUL 08 2021 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a district court order granting summary judgment, certified as final under NRCP 54(b), in an insurance action. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

*Affirmed.*

The Schnitzer Law Firm and Jordan P. Schnitzer, Las Vegas, for Appellant.

Christian, Kravitz, Dichter, Johnson & Sluga, PLLC, and Gena LoPresto Sluga and Cara L. Christian, Las Vegas; The Feldman Firm, P.C., and David J. Feldman, Las Vegas, for Respondents.

BEFORE THE SUPREME COURT, PARRAGUIRRE, STIGLICH, and SILVER, JJ.

*OPINION*

By the Court, STIGLICH, J.:

This appeal concerns the validity of an exclusion in a personal umbrella liability insurance policy. Consistent with the third-party nature of liability insurance, the policy expressly excludes coverage for damages that are "payable to any insured." Appellant claims, however, that the exclusion is invalid because it veered from statutory requirements and was not disclosed to him at the time of purchase. We conclude that NRS 687B.147, which requires disclosures to be made in a certain manner when an exclusion like this one appears in a "policy of motor vehicle insurance," does not apply to umbrella policies. Further, while we recognize that an exclusion that is *never* disclosed to any insured may be unenforceable, we conclude that an insured who asserts such nondisclosure must offer admissible evidence supporting that assertion, such as an affidavit. In the proceedings below, the district court properly found that the exclusion was valid and precluded coverage. Accordingly, we affirm its order granting summary judgment.

*FACTS AND PROCEDURAL HISTORY*

Appellant Filippo Sciarratta and his then-wife Cynthia owned a Kawasaki motorcycle. In June 2015, Sciarratta allowed his brother-in-law Jonas Stoss to drive the motorcycle while Sciarratta rode as a passenger. Stoss lost control of the motorcycle, and Sciarratta was seriously injured. The parties have stipulated that Stoss was negligent.

At the time of the crash, Cynthia was the named insured on a personal umbrella policy (the Umbrella Policy) directly underwritten by respondent Farmers Insurance Exchange (Farmers). The Sciarrattas also had a motorcycle liability policy underwritten by respondent Foremost

Insurance Company, and an automobile liability policy underwritten by respondent Mid-Century Insurance Company. The three insurers have a corporate relationship that is neither fully clear from the record nor relevant to the issues on appeal. The insurers have defended the suit together, and both sides refer to them collectively as the "Farmers Entities."

Sciarratta sought coverage for his injuries under all three policies. Foremost and Mid-Century paid over $500,000 under the auto and motorcycle policies, but Farmers denied coverage under the Umbrella Policy for two related reasons. Both reasons touch on the nature of liability insurance, which generally pays funds *to* third parties for damages that are caused *by* the insured, as opposed to first-party insurance such as health insurance, which pays funds to insureds. First, Farmers argued that Stoss was *not* an insured under the Umbrella Policy, and thus it was not responsible for the damages he caused. Second, Farmers pointed to an exclusion in the policy which stated that the insurance did not cover any damages "payable to an insured" (the Exclusion). Because Sciarratta *was* an insured under the Umbrella Policy, Farmers argued, he was not entitled to payment under the policy.

Sciarratta sued Foremost and Mid-Century for breach of contract, misrepresentation, and bad faith concerning all of the policies. He asserted that the Umbrella Policy was a part of the Mid-Century auto policy. In his operative complaint, Sciarratta alleged in general terms that his claims were covered under the Foremost and Mid-Century policies. Sciarratta also alleged that those insurers had misrepresented pertinent facts related to coverage, but he did not state what those facts were.

Farmers voluntarily joined the litigation and counterclaimed for a declaratory judgment that it owed nothing under the Umbrella Policy.

It reiterated its original grounds for denying Sciarratta's claim. In his answer, Sciarratta denied the existence of the Exclusion on the ground that he was "without sufficient knowledge or information to form a belief as to the truth or falsity of the allegation[.]" He did not state that he did not receive a copy of the Umbrella Policy. He raised several affirmative defenses, including that Farmers was estopped from seeking relief or had waived relief, but he asserted no facts in support of his position.

Approximately nine months later, Farmers moved for summary judgment. Farmers included a copy of the Umbrella Policy as an exhibit, accompanied by a sworn affidavit stating that the copy was a true and correct copy of the actual policy issued to Cynthia and in effect at the time of the accident in June 2015. The first page of the exhibit is a cover page dated April 3, 2017, which states the following: "Attached is a true copy of the original declaration page. The attached policyback and endorsements did not mail with this declaration page, but are included as requested." The next pages are declarations dated March 19, 2015, showing that the policy was in effect from March 18, 2015, to May 5, 2016. Next is a copy of the Umbrella Policy itself, including the Exclusion. Farmers included another exhibit which showed that Cynthia had declined uninsured motorist coverage under the Umbrella Policy in May 2014, indicating that the 2015 mailing was a renewal.

Sciarratta opposed the motion for summary judgment. He argued that summary judgment was premature and requested more time for discovery. He further argued that, even if the court could properly consider the motion on the existing record, the Exclusion was unenforceable for two different reasons. First, he argued that the Exclusion did not comply with NRS 687B.147. This statute, which applies to "a policy of motor vehicle

SUPREME COURT
OF
NEVADA

(O) 1947A

4

insurance covering a passenger car," requires disclosure of any exclusion of the liability of one insured to another insured "on a form approved by the Commissioner." Farmers did not claim to have complied with the statute by disclosing the Exclusion on the form specifically approved for that purpose. Next, he argued that Farmers *never* sent him or his wife a copy of the policy containing the Exclusion. For this proposition, he relied solely on the copy of the policy Farmers had submitted, which stated that "[t]he attached policyback and endorsements did not mail with this declaration page."

The district court found that NRS 687B.147 does not apply to umbrella policies, and so the statute did not invalidate the Exclusion. Because the court also found that Sciarratta was an "insured" and thus excluded from coverage, it granted summary judgment to Farmers on its declaratory judgment action. The district court did not expressly address Sciarratta's contention that the Exclusion was never disclosed. The district court certified its decision as final pursuant to NRCP 54(b) and stayed proceedings on Sciarratta's misrepresentation and bad faith claims pending this appeal.

## DISCUSSION

There is no dispute that the Exclusion, if valid, precludes coverage, as Sciarratta does not challenge the district court's finding that he is an "insured" under the Umbrella Policy. Therefore, the issue on appeal is limited to whether the Exclusion is valid. As to this issue, we review the district court's grant of summary judgment de novo. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment must be granted if the pleadings and other evidence on file show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* As this court has explained, "[w]hen a

motion for summary judgment is made and supported as required by NRCP 56, the non-moving party may not rest upon general allegations and conclusions, but must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine factual issue." *Id.* at 731, 121 P.3d at 1030-31.

*NRS 687B.147 applies only to primary motor vehicle policies*

We first address Sciarratta's contention that the Exclusion is unenforceable because Farmers did not comply with NRS 687B.147. We have never construed NRS 687B.147, much less stated the consequences for noncompliance. Nor must we do so today, because we hold that a personal umbrella liability policy is *not* a "policy of motor vehicle insurance." Thus, the statute does not apply here.

In *Estate of Delmue v. Allstate Insurance Co.*, 113 Nev. 414, 936 P.2d 326 (1997), this court examined the scope of NRS 687B.145(2), which requires insurance companies to offer "uninsured and underinsured vehicle coverage in an amount equal to the limits of coverage for bodily injury sold to an insured under *a policy of insurance covering the use of a passenger car*." (Emphasis added.) The issue was whether an umbrella policy was subject to the statute. We concluded that "the phrase 'a policy of insurance covering the use of a passenger car,' does not distinguish between primary automobile coverage policies and umbrella policies," and thus umbrella policies were subject to the requirements of NRS 687B.145(2). *Delmue*, 113 Nev. at 417, 936 P.2d at 328. But the Legislature soon changed the statute by expressly excluding umbrella policies from the operation of NRS 687B.145. *See* 1997 Nev. Stat., ch. 603, § 22.4, at 3032-33 (now codified as NRS 687B.145(5)).

Sciarratta argues that when the Legislature amended NRS 687B.145, it did *not* amend NRS 687B.147. Thus, he asserts, if NRS

687B.147 ever applied to umbrella policies, then it continues to apply to umbrella policies. Conversely, Farmers argues that the Legislature, in amending NRS 687B.145, directed this court to interpret the phrase "a policy of insurance covering the use of a passenger car" as excluding umbrella policies wherever it appears.

This case is simpler than the parties' arguments make it appear to be. We are puzzled by the parties' emphasis on the phrase "a policy of insurance covering the use of a passenger car," because that phrase does not appear in NRS 687B.147.[1] The operative language in NRS 687B.145 and NRS 687B.147 is critically different: whereas NRS 687B.145 applies to "a policy of insurance covering the use of a passenger car," which we read in *Delmue* as including *any* policy of insurance covering the use of a passenger car, NRS 687B.147 applies only to "a policy of *motor vehicle insurance* covering a private passenger car." (Emphasis added.)[2] Neither

---

[1]This mistaken focus was shared by the United States District Court for the District of Nevada when it held that NRS 687B.147 does not apply to umbrella policies. *State Farm Fire & Cas. Co. v. Repke*, No. 2:06-CV-0366-JCM-RJJ, 2007 WL 7121693, at *5 (D. Nev. Feb. 27, 2007), *aff'd*, 301 F. App'x 698 (9th Cir. 2008). The district court in this case treated *Repke* as if it were controlling authority. While we conclude the *Repke* court reached the correct result, albeit for the wrong reason, we take this opportunity to remind the bench and bar that a federal court's "interpretation of a Nevada statute on a matter of state law does not constitute mandatory precedent." *In re Nev. State Eng'r Ruling No. 5823*, 128 Nev. 232, 242, 277 P.3d 449, 456 (2012).

[2]Incidentally, no party has ever discussed whether it matters to this analysis that Sciarratta was injured on a motorcycle, which is not a "passenger car." Because we hold that the statute does not apply, we assume without deciding that the difference between a motorcycle and a passenger car is immaterial here. *But cf.* 2021 Nev. Stat., ch. 118 (A.B. 130)

party addresses the inclusion of the words "motor vehicle" in one statute and their omission from the other. And yet those words must mean something distinct from the fact that a car is covered; otherwise, they would be redundant and meaningless. *See C. Nicholas Pereos, Ltd. v. Bank of Am.*, 131 Nev. 436, 441, 352 P.3d 1133, 1136 (2015) ("We will not interpret a statute in a way that would render any part of [the] statute meaningless." (alteration in original) (internal quotation marks omitted)).

The Vermont Supreme Court, citing *Delmue*, has distinguished statutes "predicated . . . on the type of *coverage*," like a "policy of insurance covering the use of a passenger car," from statutes predicated on "the type of *policy*," like a "motor vehicle polic[y]." *Ins. Co. of Pa. v. Johnson*, 987 A.2d 276, 282-83 (Vt. 2009). We are generally "reluctant to rely on other jurisdictions' treatment" of their own insurance statutes, as those statutes vary in their wording. *Delmue*, 113 Nev. at 418 n.5, 936 P.2d at 329 n.5. However, the Vermont Supreme Court's comparative analysis is persuasive, precisely because it takes the differences between statutes into account. Under this analysis, NRS 687B.145 is predicated on the type of coverage, but NRS 687B.147 is predicated on the type of policy. We conclude that the words "motor vehicle" distinguish NRS 687B.147 from NRS 687B.145 by limiting the application of NRS 687B.147 to primary motor vehicle policies.

Therefore, we hold that NRS 687B.147 does not apply to the Umbrella Policy—not because *Delmue* was legislatively overruled, but because *Delmue* never would have governed the scope of NRS 687B.147,

---

(amending NRS 687B.145 to apply to motorcycles in addition to passenger cars).

which, unlike NRS 687B.145, is expressly limited to "polic[ies] of motor vehicle insurance."[3]

*Sciarratta failed to create a genuine issue of material fact that would defeat summary judgment*

Sciarratta also argues that the Exclusion is unenforceable because it was never mailed, and thus no insured received written notice of the Exclusion. He notes that other courts generally agree that where an insurer does not disclose the existence of an exclusion before an otherwise covered loss, the exclusion is not enforceable by the insurer. *See, e.g., Farmers Ins. Exch. v. Call*, 712 P.2d 231, 236-37 (Utah 1985); *Kozlik v. Gulf Ins. Co.*, 673 N.W.2d 343, 348-49 (Wis. Ct. App. 2003). He urges this court to adopt that rule.

We conclude that this case does not present an opportunity either to adopt or reject Sciarratta's proposed rule. Even if we chose to adopt such a rule, it would not trump the requirement that, at the summary judgment phase, a party has a duty to support its assertions with evidence by "citing to particular parts of materials in the record." NRCP 56(c)(1)(A). To defeat summary judgment under his proposed rule, Sciarratta would have had to demonstrate either that there was no dispute that the Exclusion was not disclosed before the accident, or at least that there was a genuine

---

[3]Sciarratta also argues that the Exclusion is a household exclusion and that such exclusions violate public policy and are unenforceable in the absence of a statute specifically permitting them. The sole case he cites for this proposition, *Progressive Gulf Insurance Co. v. Faehnrich*, 130 Nev. 167, 327 P.3d 1061 (2014), does not support a public policy against the enforcement of household exclusions. Indeed, there, we enforced a household exclusion in an automobile policy issued out of state, despite a lack of strict compliance with Nevada statutes. *See id.* at 176-77, 327 P.3d at 1067.

dispute as to whether it was disclosed. Sciarratta appears to recognize his burden, stating that the evidence undisputedly shows that the policy was not mailed. But the only evidence that he cites is the cover letter showing that Farmers did not mail a copy of the policy in March 2015.

That was not enough. Other evidence showed that the Umbrella Policy was already in effect in 2014, and thus the March 2015 mailing contained renewal documents. The fact that a complete copy of the policy was not sent in March 2015 does not lead to the conclusion that no copy was *ever* sent to the insured—at least not without significant speculation that cannot defeat summary judgment. *See Wood*, 121 Nev. at 731, 121 P.3d at 1030. If Sciarratta intended to rely on his assertion that no insured ever received a copy of the policy, he was required to "by affidavit or otherwise, set forth specific facts" to that effect. *See id.* He did not meet this burden of production, and the district court properly granted summary judgment.[4]

*The district court did not abuse its discretion in denying Sciarratta's NRCP 56(d) request*

Sciarratta finally contends the district court should have granted his request for more time to conduct additional discovery before it granted summary judgment. Under NRCP 56(d),[5] if a party opposing

---

[4]In holding that Sciarratta did not present sufficient evidence to demonstrate a genuine dispute as to the disclosure or nondisclosure of the Exclusion, we of course express no opinion as to what would happen if an insured *did* present such evidence. Difficult and unsettled legal questions might well arise. The difficulty of these possible questions underscores the need to decide them in a properly presented case, on a clearly developed record.

[5]NRCP 56 was amended in 2019. At the time of summary judgment, the relevant subsection was NRCP 56(f). "The changes are stylistic" and do

summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." NRCP 56(d) is phrased permissively ("the court may"), and thus unlike the summary judgment decision itself, "[t]he decision to grant or deny a continuance of a motion for summary judgment to allow further discovery is reviewed for an abuse of discretion." *Choy v. Ameristar Casinos, Inc.*, 127 Nev. 870, 872, 265 P.3d 698, 700 (2011).

When the nonmovant has no "dilatory motive," it is an abuse of discretion to deny such a continuance at an early stage in the proceedings. *Aviation Ventures, Inc. v. Joan Morris, Inc.*, 121 Nev. 113, 118, 110 P.3d 59, 62 (2005). But the nonmovant has the burden to "affirmatively demonstrat[e] why he cannot respond to a movant's affidavits as otherwise required . . . and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Bakerink v. Orthopaedic Assocs., Ltd.*, 94 Nev. 428, 431, 581 P.2d 9, 11 (1978). Federal courts interpreting FRCP 56(d), which is identical to NRCP 56(d), have stated that "a party must show that the requested discovery, if obtained, 'would alter the court's determination.'" *Harrison v. Office of the Architect of the Capitol*, 281 F.R.D. 49, 52 (D.D.C. 2012) (quoting *Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 596 (D.C. Cir. 2009)).

---

not affect the applicable legal standards. NRCP 56(d), Advisory Committee Note—2019 Amendment. For consistency and clarity, this opinion uniformly refers to the rule as NRCP 56(d), its current designation.

Here, Sciarratta's counsel filed an affidavit declaring that he intended to depose several individuals for several reasons. The only such deposition that appears arguably relevant to Sciarratta's theory that the policy was not delivered was that of Farmers' NRCP 30(b)(6) designee, whom he stated he wished to question "regarding various matters including representations agents are expected to make to insureds, the purchase process, the policies at issue in this matter, *when the policies were provided to the insureds* as well as the insurance entities positions regarding the insurance clauses."[6] (Emphasis added.) We conclude that this did not clearly enunciate how discovery might alter the district court's determination. *See Harrison*, 281 F.R.D. at 52. Further, Sciarratta failed to meet his burden to affirmatively demonstrate why he could not respond to Farmers' evidence without further delay. *See Bakerink*, 94 Nev. at 431,

---

[6]Sciarratta also stated he intended to depose both Cynthia and the agent from whom she bought the Umbrella Policy "to demonstrat[e] misrepresentations on [Farmers'] part." He further requested more time to obtain the underwriting file and Farmers' promotional materials, which he claimed were relevant "to show what the Sciarrata's [sic] believed they were purchasing" and to his bad faith claims. Sciarratta's misrepresentation and bad faith claims are not at issue in this appeal and remain pending below.

Sciarratta further stated he intended to depose an expert regarding "what an insured expects regarding umbrella policies." Even assuming without deciding that this is the proper subject of expert testimony, this information would not be relevant to the applicability of the Exclusion. While *ambiguities* in exclusions are interpreted narrowly to effectuate the insured's reasonable expectations, *unambiguous* exclusions are enforced according to their plain meaning. *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 162, 252 P.3d 668, 672 (2011). Sciarratta does not (and cannot) argue that the Exclusion of damages "due directly or indirectly to an insured" is ambiguous. He only argues that the Exclusion was not disclosed. An expert could not have testified as to that factual issue.

581 P.2d at 11. As noted above, if Sciarratta intended to rely on his assertion that no insured received a copy of the Umbrella Policy, he could have (and should have) filed an affidavit to that effect himself. There was no need to wait to depose Farmers' NRCP 30(b)(6) designee. Thus, the district court could have concluded that Sciarratta was dilatory. Accordingly, we conclude that the district court did not abuse its discretion by denying a continuance.

## CONCLUSION

We hold that NRS 687B.147 applies only to policies of "motor vehicle insurance" and not to umbrella policies. While we agree that an insurer's complete failure to disclose a policy exclusion might make the exclusion unenforceable, we hold that an insured who alleges that an exclusion was not disclosed must make that allegation in an affidavit rather than rely solely on the arguments of counsel. Finally, we hold that the district court did not abuse its discretion by denying a continuance where the insured did not clearly explain how further discovery would change the outcome. We thus affirm the district court's order granting Farmers summary judgment.

_____, J.
Stiglich

We concur:

_____, J.
Parraguirre

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A