GISELE IPPOLITO AND PASQUALE IPPOLITO, SR., APPELLANTS, v. LIBERTY MUTUAL INSURANCE COMPANY, RESPONDENT.

No. 15476

August 27, 1985        705 P.2d 134

*Albert D. Massi* and *Allen Cap,* Las Vegas, for Appellant Gisele Ippolito.

*Robert K. Dorsey,* Las Vegas, for Appellant Pasquale Ippolito, Sr.

*Fitzgibbons, Cobb & Morrell,* Las Vegas, for Respondent Liberty Mutual Insurance Company.

*Brian McKay*, Attorney General, and *Deborah Gallagher*, Deputy Attorney General, Carson City, for the State of Nevada, Amicus Curiae.

## OPINION

*Per Curiam:*

The Ippolitos appeal the lower court's order granting Liberty Mutual's motion to dismiss a declaratory relief action. The Ippolitos contend that the district court erred in its determination that the controlling statutory provision requiring insurance carriers to offer equal limits of uninsured motorist limits, among other protections, does not apply to Gisele Ippolito's policy with Liberty Mutual. We agree with the Ippolitos, and reverse the judgment of the lower court.

The facts in this appeal are not in dispute. Gisele Ippolito purchased an automobile insurance policy to go into effect on April 4, 1979. The policy provided $300,000 limits in liability protection, but only $15,000 per person, $30,000 per accident, in uninsured motorist protection. On July 1, 1979, NRS 687B.145(2)[1] became effective. This provision requires insurance

---

[1]NRS 687B.145(2) states:

Insurance companies doing business in this state must offer uninsured motorist coverage equal to the limits of bodily injury coverage sold to the individual policyholder. Uninsured motorist coverage must include a provision which enables the insured to recover up to the limits

carriers to offer uninsured motorist coverage equal to the insured's bodily injury limits. Nearly six months after this statutory change in insurance coverage, December 22, 1979, appellants' son, Pasquale Ippolito, Jr., was killed in a one-car automobile accident. However, the tort-feasor's policy limits of $15,000 could not satisfy the wrongful death judgment for over $100,000 which the Ippolitos obtained.

Gisele Ippolito then filed an action for declaratory relief, alleging that Liberty Mutual had breached its statutorily imposed duty to offer her higher uninsured limits, pursuant to the statute. Pasquale Ippolito, Sr., filed a complaint in intervention, claiming benefits under the policy. Liberty Mutual filed a motion to dismiss the complaint with prejudice, claiming that because its policy was issued prior to the effective date of the statute, the statute did not apply to the policy. The lower court granted the motion to dismiss.

Inferably, the district court must have thought that, because the policy predated the date of the statute, the statute cannot be applied to the policy unless the insured requests the additional protections offered by the statute.[2] In any case, we are asked on appeal to decide whether the increased insurance coverage required by NRS 687B.145(2) became, by implication of law, a part of Mrs. Ippolito's insurance policy after the effective date of the statutory change.[3]

We have previously determined that we will strictly construe provisions of an uninsured motorist statute in favor of recovery

---

of his own coverage any amount of damages for bodily injury from his insurer which he is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of the bodily injury coverage carried by that owner or operator.

[2]The district court's reasons for granting the motion to dismiss are unclear. At the hearing on the motion, the court conceded: "I am not making myself very clear. Accordingly, the motion to dismiss is granted."

[3]As amicus curiae for the State of Nevada, the deputy attorney general asks us to consider whether this statute is constitutional if it applies retrospectively. Liberty Mutual raised this issue, for the first time, on appeal. Because of our resolution of the issue properly before us, however, we decline to address this issue expressly. We recognize, nonetheless, that because NRS 687B.145(2) does not direct a retrospective application of its provisions by its plain language, we must construe it to apply prospectively, to policies in effect on the date the statute became effective. It is a fundamental tenet of statutory interpretation that "statutes are presumed to operate prospectively and shall not apply retrospectively unless they are so strong, clear and imperative that they can have no other meaning or unless the intent of the legislature cannot be otherwise satisfied." Holloway v. Barrett, 87 Nev. 385, 390, 487 P.2d 501, 504 (1971). The prospective application of the statute, however, does not mean that the policy before us is not governed by the statutory mandates of NRS 687B.125(2).

by the insured, and that the requirements of such a statute are implicitly a part of every policy of automobile insurance in Nevada, as if expressly written into the policy. State Farm Mut. Auto. Ins. v. Hinkel, 87 Nev. 487, 483, 488 P.2d 1151, 1153-54 (1971); Allstate Ins. Co. v. Maglish, 94 Nev. 699, 702, 586 P.2d 313, 314 (1978). We have recognized that the policy itself may not limit coverage in contravention of the public policy provided in the statute, and that provisions in conflict are "void and unenforceable because they are repugnant to the intent of the statute and against public policy." 87 Nev. at 482, 488 P.2d at 1154. The public policy expressed in NRS 687B.145(2) is that, effective July 1, 1979, insurance companies doing business in Nevada must offer uninsured-underinsured motorist coverage "equal to the limits of bodily injury coverage sold to the individual policy holder."

Interpreting the law in light of these principles, then, effective July 1, 1979—and certainly prior to the date of the accident, December 22, 1979—Liberty Mutual was obligated to offer Mrs. Ippolito uninsured-underinsured motorist limits equal to the limits of liability it had sold to her. As issued, the Liberty Mutual policy offers liability limits of $300,000, but only uninsured motorist limits of $15,000 per person, $30,000 per accident. It appears no option of increased limits was ever made available to Mrs. Ippolito, even though nearly six months elapsed after the statutory requirements became effective. Under NRS 687B.145(2), the insured should have been given the option of purchasing higher uninsured motorist limits, up to $300,000. Therefore, because the Liberty Mutual policy limits the underinsured motorist coverage available, in contravention of the statute, we must imply into the policy's provisions the increased protection afforded Mrs. Ippolito by NRS 687B.145(2).

We are unpersuaded by Liberty Mutual's assertion that the statute's protection should apply to Mrs. Ippolito's policy only upon the policy's renewal. Such an application would be haphazard and, we think, would be repugnant both to the public policy expressed in the statute, and to our obligation to resolve doubts by a construction favoring coverage.

Nor do we believe that the increased protection afforded Nevada policyholders applies only if a premium were charged and paid. Of course, if a policyholder accepted it, Liberty Mutual would be entitled to a reasonable premium for providing the mandatorily increased uninsured motorist coverage; however, it may not deny such coverage merely because it has failed to provide its policyholders an opportunity to pay a premium. We have carefully examined Liberty Mutual's remaining contentions,

and have determined that they are either not properly before us or are without merit.

Accordingly, the district court's order granting Liberty Mutual's motion to dismiss is reversed, and this matter is remanded to the district court for proceedings consistent with this opinion.