ALLSTATE INSURANCE COMPANY, APPELLANT, *v.* ROCHELLE PILOSOF AND AMERICAN HARDWARE INSURANCE GROUP, RESPONDENTS.

No. 24139

March 30, 1994 871 P.2d 351

*Rawlings, Olson & Cannon,* and *Kendall Steele,* Las Vegas, for Appellant.

*George T. Bochanis, Ltd.* and *Scott R. Schreiber,* Las Vegas, for Rochelle Pilosof.

*Thorndal, Backus, Armstrong & Balkenbush,* and *Paul F. Eisinger* and *Brian K. Terry,* Las Vegas, for American Hardware.

## OPINION

*Per Curiam:*

On May 6, 1992, respondent Rochelle Pilosof filed a complaint for declaratory relief with the district court against respondent American Hardware Insurance Group ("Hardware") and appellant Allstate Insurance Company ("Allstate"). The complaint sought clarification as to which of the two insurers, both of whom denied initial coverage, had the responsibility of providing primary coverage for an accident involving Pilosof and an uninsured motorist.

Specifically, Pilosof's complaint alleged that on February 5, 1991, while driving a 1986 Cadillac, she was involved in an accident with an uninsured driver. The Cadillac driven by Pilosof was a loaner car she was using while her vehicle was being repaired. The Cadillac was owned by Cashman Cadillac Inc. and insured by Hardware. Pilosof also had her own automobile insurance policy with Allstate. Pilosof filed claims with both companies for injuries sustained in the accident, but both declined coverage, each deferring to the other.

Pilosof argued that NRS 690B.025 controlled the question of which insurer's coverage was primary and which was excess. Hardware, joined by Pilosof, later filed a motion for summary judgment which likewise asserted that NRS 690B.025 was controlling. The district court determined that, under the facts at hand, NRS 690B.025 unambiguously designated the Allstate policy as primary and the Hardware policy as excess. Summary judgment was therefore entered in favor of Hardware and Pilosof. This appeal followed.

The central issue on appeal is whether NRS 690B.025 assigns primary coverage to Allstate, Pilosof's insurer, rather than Hardware, Cashman Cadillac's insurer, under the facts of this case. NRS 690B.025 provides, in pertinent part, as follows:

> Primary and excess coverage; garageman required to post notice.

1. If two or more policies of liability insurance covering the same motor vehicle are in effect when the motor vehicle is involved in an incident which results in a claim against the policies:

. . . .

(c) If, while his own vehicle was being repaired or serviced in the bailment of a garageman engaged in the business of repairing or servicing motor vehicles, the customer is lent by the garageman a motor vehicle for use during the time required to complete the repairs or service, the policy issued to the customer shall be deemed to be primary and all other policies shall be deemed to provide excess coverage. A garageman engaged in the business of repairing or servicing motor vehicles who loans his customer a vehicle for use during the time required to complete the repairs or service shall provide express notice to the customer that the customer's policy of insurance will provide primary coverage while the customer is operating that vehicle.

. . . .

3. This section applies only to policies of liability insurance issued or renewed on or after July 1, 1981.

Allstate insists that NRS 690B.025 is inapplicable to the instance case because, by its terms, it applies only to "policies of *liability* insurance[,]" not to uninsured motorist coverage. We agree. There is clearly a well-recognized difference between liability insurance ("[t]hat type of insurance protection which indemnifies one from liability to third persons as contrasted with insurance coverage for losses sustained by the insured"), *Black's Law Dictionary* 915 (6th ed. 1990), and uninsured motorist coverage ("[p]rotection afforded an insured by first party insurance against bodily injury inflicted by an uninsured motorist, after the liability of the uninsured motorist for the injury has been established"). *Id.* at 1532.

Pilosof and Hardware note that Nevada law requires uninsured motorist coverage to be provided by every seller of liability insurance and conclude that this makes uninsured motorist coverage a subpart of liability insurance. *See* NRS 690B.020(1);[1] NRS

---

[1]NRS 690B.020(1) provides, in pertinent part, as follows:

1. Except as otherwise provided in this section and NRS 690B.035, no policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles, for bodily injury, sickness or

687B.145(2).[2] This conclusion is incorrect. Under NRS 690B.020, uninsured motorist coverage may be included within the liability insurance policy or be "supplemental thereto." The question of whether uninsured motorist protection is a subset of liability insurance is thus not addressed by the statute; rather, the provision of such insurance by liability insurers is simply mandated, either as part of the liability policy or as a supplemental product.

In the present case, for example, the Allstate automobile policy included a separate section for "liability insurance" (part 1) and "uninsured motorists insurance" (part 5). Accordingly, it appears that this policy structured the two items as separate component parts in an overall insurance package. Pilosof's claim was against the uninsured motorist section of her Allstate policy, not the liability insurance section.

Pilosof's contention that uninsured motorist coverage is the equivalent of liability coverage, since it takes the place of liability coverage, is likewise incorrect. Uninsured motorist coverage is first-party coverage that fills the void left by uninsured parties who are liable for injuries resulting from vehicular accidents. UM coverage does not take the place of the injured insured's own liability insurance.

This court has previously recognized that a difference exists between liability and uninsured motorist coverage, and why the former, unlike the latter, may not be stacked:

> [A]ppellants seek to validate their position by claiming parity with our decisions permitting stacking in the areas of uninsured motorist coverage . . . . It is manifestly apparent, however, that no such parity exists. In contradistinction to the first-person coverage declared stackable under our cases cited above, we are here concerned with third-party bodily liability coverage available to an insured as a result of the

---

disease, including death, resulting from the ownership, maintenance or use of the uninsured or hit-and-run motor vehicle. No such coverage is required . . . where rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein, or upon any renewal of such a policy unless the coverage is then requested in writing by the named insured. The coverage required in this section may be referred to as "uninsured vehicle coverage."

[2]NRS 687B.145(2) provides, in pertinent part, as follows:

2. Insurance companies transacting motor vehicle insurance in this state must offer, on a form approved by the commissioner, uninsured and underinsured vehicle coverage in an amount equal to the limits of coverage for bodily injury sold to an insured under a policy of insurance covering the use of a passenger car. . . .

ownership, use or maintenance of a vehicle. The first-person insurance focuses on the person of the insured and specified beneficiaries, whereas the third-party liability coverage derives from the ownership or use by an insured of a vehicle.

Rando v. California State Auto Ass'n, 100 Nev. 310, 314, 684 P.2d 501, 503-504 (1984) (citing Emick v. Dairyland Ins. Co., 519 F.2d 1317 (4th Cir. 1975)). Furthermore, the insured may expressly reject uninsured motorist coverage, but must carry liability insurance, absent proof of self-insured status, under NRS 485.185.[3]

It is possible, as Hardware and Pilosof argue, that the legislature did not specifically intend, in drafting NRS 690B.025, that liability and uninsured motorist coverage be treated differently for purposes of determining responsibility for primary coverage in accidents involving loaner cars. Nevertheless, it is not within the purview of this court to infer legislative intent or go beyond the ordinary meaning of a statute absent an ambiguity in the statute which does not exist here. *See, e.g.,* City Council of Reno v. Reno Newspapers Inc., 105 Nev. 886, 891, 784 P.2d 974, 977 (1989) (citing Cirac v. Lander County, 95 Nev. 723, 729, 602 P.2d 1012, 1015 (1979)).

For the reasons stated above, we conclude that NRS 690B.025 is inapplicable to the facts of the instant case. We are, however, still left with the task of determining which of the two policies constitutes primary coverage.

The Court was faced with this same issue in Co-operators Ins. Co. v. Allstate Rent-A-Car, 107 Nev. 17, 804 P.2d 1050 (1991), wherein NRS 690B.025 was found to be inapplicable to car accidents involving rental vehicles. In that case we resolved the issue by applying the following rule:

> Absent legislative directive, we must look to the individual policies in question. Where one policy explicitly defines its liability, and the other does not, the policy with the more specific language controls.

*Id.* at 19-20, 804 P.2d at 1052.

We are unable to apply the *Co-operators Ins.* rule in our analysis of the instant appeal because, for reasons which are not apparent, the Hardware policy was not included in the record on appeal. Accordingly, the dispositive issue concerning which pol-

---

[3]It is likewise instructive that NRS 485.3091, which specifies what "must" be included in a motor vehicle liability policy, does not include uninsured motorist protection in its list of requirements.

icy contains "the more specific language" must be determined in the district court.

For reasons previously stated, we conclude that NRS 690B.025 does not apply to claims against uninsured motorist coverage. The relevant standard applicable to the instant case is that enunciated by this court in *Co-operators Ins.*

The summary judgment entered below is reversed and the matter is remanded to the district court for further proceedings consistent with this opinion.