OPINION
 

 By the Court,
 

 Hardesty, J. :
 

 This matter arises from a single-vehicle rollover accident that claimed the driver’s life. The vehicle’s owner, who was a passenger in the vehicle and who survived the accident, did not maintain automobile insurance on the vehicle. Thus, to recover insurance proceeds from the driver’s death, the driver’s parents made a claim with their insurance company, under the uninsured motorist provision of their policy. The parents’ insurance company denied the claim, contending that, under Nevada law, uninsured motorist coverage does not apply to single-vehicle accidents.
 

 During this time, the driver’s parents also instituted an action against the vehicle’s owner, seeking to recover damages from him for their son’s death. The vehicle’s owner did not make an appearance in the action, and consequently, a default was entered against him. Nevertheless, the parents’ insurance company intervened, attempting to contest the driver’s liability and by extension to prevent it from being liable for the vehicle’s owner based on the driver’s parents’ uninsured motorist coverage. The district court ultimately refused to allow the insurance company to contest the driver’s liability, given the insurer’s belated intervention in relation to the entry of default against the driver. But the court nevertheless determined, as the insurer had asserted in denying the parents’ insurance claim, that uninsured motorist coverage does not apply to single-vehicle accidents. Thus, regardless of the owner’s liability, the insurance company was not responsible to compensate the driver’s parents.
 

 In this appeal, we consider whether an insurance company that has notice of a pending suit and the plaintiff’s intent to seek entry of default is bound by the entry of default if it later intervenes. We conclude that entry of default binds an insurance company intervenor as to the liability of an uninsured motorist defendant if the insurance company had notice of the litigation and the plaintiff’s intent to seek entry of default, but failed to intervene before a default was entered.
 

 
 *1064
 
 We also consider whether Nevada law requires physical contact between an uninsured motorist and the insured or the insured’s vehicle. That is, we address whether uninsured motorist coverage may apply to single-vehicle accidents. We determine that uninsured motorist benefits are available when an insured person is legally entitled to recover from the owner or operator of a vehicle that meets one of NRS 690B. 020(3) ’s statutory definitions for uninsured motor vehicle. The “physical contact” requirement only applies to cases in which an unidentified or hit-and-run driver, as defined in NRS 690B.020(3)(f), is alleged to be negligent.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 Matthew LoMastro died in an automobile accident in April 2005. On the night of Matthew’s death, Matthew and two friends, Chad Leach and Daniel Sullivan, were drinking whiskey and beer while socializing outside of a 7-Eleven store in Las Vegas. When they left the 7-Eleven in Leach’s car, Leach was driving. At some point, Leach allowed Matthew to drive his car. Matthew was driving the car between 40 and 50 miles per hour when the car drifted to the right, jumped the curb, rode up on the jersey barrier, and eventually rolled over and struck a concrete wall. When the car rolled over, Matthew was ejected from the car. Medical personnel pronounced Matthew dead at the scene. Leach and Sullivan suffered only moderate injuries.
 

 Thereafter, in May 2005, Matthew’s parents, appellants/cross-respondents Steven LoMastro and Colleen Morris (the LoMastros), discovered that Leach did not have automobile insurance and sought to recover for Matthew’s death under the uninsured motorist provision of the automobile insurance policy that they held with respondent/cross-appellant American Family Insurance Group. The LoMastros demanded their policy limits. After the LoMastros filed their claim, they exchanged correspondence with American Family for several months and cooperated with American Family’s ongoing investigation of the matter.
 

 Meanwhile, the LoMastros instituted a civil action against Leach claiming that he negligently entrusted his vehicle to Matthew and caused Matthew’s death. Leach did not answer the LoMastros’ complaint. Ultimately, American Family denied the LoMastros’ insurance claim. Following American Family’s denial of the claim, the LoMastros notified American Family of their action against Leach. Two months later, the LoMastros further informed American Family that they had served Leach with the complaint and intended to seek entry of default against him for his failure to respond to it.
 

 The LoMastros eventually had default entered against Leach, and they informed American Family that default had been en
 
 *1065
 
 tered. American Family replied that it would not be bound by the default entered against Leach because it did not insure him and because of an exclusion in the LoMastros’ policy that purported to prevent American Family from being bound by a judgment unless it consented to litigation.
 
 [1]
 
 After receiving notice of a hearing for entry of default judgment against Leach, American Family moved to intervene in the LoMastros’ action against Leach.
 

 After entry of default but before default judgment was entered, the district court granted American Family’s motion to intervene. American Family attached an answer in intervention to its motion to intervene alleging, among other things, defenses on behalf of Leach. The LoMastros moved to strike the answer in intervention as a fugitive document, arguing that no answer could be made after entry of default. The district court denied the motion to strike, finding that the answer was timely, but determined that American Family was precluded by the entry of default from contesting Leach’s liability.
 

 The LoMastros then filed an amended complaint and a second amended complaint, which did not alter the allegations against Leach but asserted new causes of action against American Family directly, including claims for breach of the implied covenant of good faith and fair dealing and violations of the Nevada Unfair Claims Practices Act. American Family answered the second amended complaint, denying the allegations against Leach and itself, and then moved for summary judgment in its favor on all of the causes of action in the complaint, arguing that uninsured motorist coverage does not apply to single-vehicle accidents because Nevada law requires physical contact between an uninsured motorist and the insured or insured’s vehicle. The district court granted American Family’s motion for summary judgment on all of the LoMastros’ claims against it. The district court also entered default judgment against Leach in the amount of $3 million. Thereafter, the LoMastros moved to amend or set aside the summary judgment in favor of American Family under NRCP 59(e) and 60(b). The district court denied that motion, affirming its summary judgment. This appeal followed.
 
 [2]
 

 
 *1066
 

 DISCUSSION
 

 This court reviews district court decisions granting summary judgment de novo.
 
 [3]
 
 Summary judgment is appropriate if, after viewing the record before the district court in the light most favorable to the nonmoving party, ‘ ‘no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.”
 
 [4]
 
 Whether an issue of fact is material is controlled by the substantive law at issue in the case, and such a factual dispute is genuine if ‘ ‘the evidence is such that a rational trier of fact could return a verdict for the nonmoving party.’ ’
 
 [5]
 

 In this opinion, we first address American Family’s argument that the district court erred when it prevented American Family from contesting Leach’s liability because American Family intervened after entry of default against Leach. We then address whether the district court erred when it granted summary judgment to American Family, concluding that uninsured motorist benefits are unavailable for single vehicle accidents.
 

 Entry of default against Leach was sufficient to bind American Family
 

 On cross-appeal, American Family asserts that the district court improperly prohibited it from arguing that Leach was not liable for Matthew’s injuries. After American Family denied the LoMastros’ claim for benefits, the LoMastros notified American Family of the suit pending against Leach, of his failure to answer the complaint, and their intent to seek entry of default. American Family took no action regarding the suit until nearly six months later — after default against Leach had been entered — when American Family moved
 
 *1067
 
 to intervene. Although the district court allowed American Family to intervene, it determined that American Family was precluded by the entry of default from contesting Leach’s liability. American Family never moved to set aside the default, but argues on cross-appeal that it should be allowed to contest Leach’s liability. We disagree.
 

 In Nevada, an insurance company “is bound by the result of an action between its insured and an uninsured motorist when the carrier has notice of the action but elects not to intervene.”
 
 [6]
 
 In this case, American Family intervened to argue that the LoMastros are not legally entitled to recover from Leach and therefore are not entitled to recover uninsured motorist benefits. Thus, American Family intervened to defend Leach and became a codefendant to the action, permitted to raise all defenses available to Leach.
 
 [7]
 
 Generally, entry of default against one codefendant who fails to answer or whose answer is stricken does not preclude an answering codefendant from contesting liability.
 
 [8]
 
 In fact, if the answering codefendant successfully contests the defendants’ joint liability, default judgment should not be granted against the defaulting codefendant.
 
 [9]
 
 However, when an intervenor intervenes, it “is bound by all
 
 *1068
 
 prior orders and adjudications of fact and law as though [it] had been a party from the commencement of the suit.”
 
 [10]
 
 Prior decrees should only be set aside, on the motion of the intervenor, if such decrees “ ‘would deprive the intervenor of substantial rights which [it] has not been remiss in pressing.’ ”
 
 [11]
 
 At the time of American Family’s intervention, default had been entered against Leach but the district court had not yet made a judgment in default.
 
 [12]
 

 This court has rarely addressed the distinction between entry of default and entry of default judgment. A party may obtain entry of default against a party that fails to file a responsive pleading within the time mandated.
 
 [13]
 
 Entry of default acts as an admission by the defending party of all material claims made in the complaint.
 
 [14]
 
 Entry of default, therefore, generally resolves the issues of liability and causation and leaves open only the extent of damages.
 
 [15]
 
 The parties do not cite any cases discussing the effect of entry of default on a later intervenor, nor do they contest that American Family should have been permitted to intervene.
 
 [16]
 
 We conclude that when an intervenor wishes to assert defenses to liability on behalf of the original defendant, it must intervene before entry of default or move to set aside the default.
 

 
 *1069
 
 In this case, American Family not only had notice of the pending suit against Leach but notice of the LoMastros’ intent to seek entry of default; still, American Family waited to intervene until after default was entered against Leach, and after American Family intervened it chose not to file a motion to set aside the default. American Family argues that because it intervened, it was able to assert all defenses available to Leach, but in attempting to contest Leach’s liability, American Family disregards the timing of its intervention and the defenses that were available to Leach at that time. After entry of default, Leach was limited to contesting the amount of damages. Likewise, because American Family intervened after the entry of default, despite having notice of the LoMastros’ intent to seek default, it was limited, on the claims against Leach, to contesting the amount of damages, or alternatively, it could have moved to set aside the entry of default.
 
 [17]
 

 Nevertheless, American Family argues that under
 
 Allstate Insurance Co. v.
 
 Pietrosh
 
 [18]
 
 it would have been bound only upon the entry of default judgment. That argument appears premised on this court’s statement that when an insurance company has notice and an opportunity to intervene in an action, it will be bound by the court’s judgment against the uninsured motorist.
 
 [19]
 

 American Family’s contention in regard to
 
 Pietrosh
 
 is meritless. Nothing in this court’s conclusion in
 
 Pietrosh
 
 indicates that insurers are only bound by default judgments.
 
 [20]
 
 Indeed, in
 
 Pietrosh,
 
 we imposed a duty on insurance companies to take affirmative action to defend their right to deny a claim.
 
 [21]
 
 We invalidated an exclusion in an uninsured motorist policy that a judgment obtained against an uninsured motorist would not bind the insurer unless the insurer consented to the litigation.
 
 [22]
 
 We recognized that the exclusion would be reasonable if the insurance company did not have notice of the litigation or if judgment was obtained by default but held that an insurance company with notice should be bound by a judgment obtained through adversarial proceedings despite contrary rules regarding privity in using a judgment against a party by estoppel.
 
 [23]
 
 We then expanded on the
 
 Pietrosh
 
 analysis in
 
 State Farm Mutual Automobile v. Christensen,
 
 ultimately determining that a default
 
 *1070
 
 judgment bound an insurer that chose not to intervene in the action against the uninsured motorist.
 
 [24]
 
 In this case, American Family not only had notice of the pending suit against Leach but notice of the LoMastros’ intent to seek entry of default; still, American Family waited to intervene until after default was entered against Leach. Our reasoning in
 
 Pietrosh,
 
 which was expanded in
 
 Christensen,
 
 supports our conclusion that the entry of default bound American Family in this case.
 

 Finally, American Family asserts that the district court improperly applied
 
 Eckerson v. Rudy
 
 to hold that it was bound by the entry of default against Leach.
 
 [25]
 
 We agree with American Family that the analysis in
 
 Eckerson
 
 is inapplicable to this case. In
 
 Eckerson,
 
 this court affirmed a district court order denying a motion to intervene because not only was a default judgment entered against the defendant, but the judgment had been satisfied.
 
 [26]
 
 In a similar case involving an underinsured motorist claim,
 
 Lopez v. Merit Insurance Co.,
 
 this court stated that
 
 Eckerson
 
 was consistent with other cases preventing intervention after the entry of a final judgment and reversed a district court order allowing an insurance company to intervene in a case against an underinsured driver.
 
 [27]
 
 In
 
 Lopez,
 
 we specifically declined to address whether the default judgment against the underinsured driver would bind the insurance company in a later proceeding.
 
 [28]
 

 Eckerson
 
 and
 
 Lopez
 
 are inapposite because both cases address the timeliness of motions to intervene; in this case, we address the effect of the entry of default against the uninsured motorist on an intervenor and neither the LoMastros nor American Family are challenging the district court’s order granting the motion to intervene in this appeal.
 
 [29]
 
 Although the district court improperly applied the
 
 Eckerson
 
 analysis,
 
 *1071
 
 it correctly determined that American Family was bound by the entry of default.
 
 [30]
 

 In conclusion, American Family’s arguments that it should not be bound by the entry of default against Leach are unpersuasive. We affirm the order of the district court precluding American Family from contesting Leach’s liability for Matthew’s death.
 

 The district court erred when it held that Nevada law requires a collision between two vehicles for recovery of uninsured motorist benefits
 

 On appeal, the LoMastros challenge the district court’s order granting summary judgment to American Family, arguing that the district court erred when it found that Nevada law required physical contact between an uninsured motorist and the insured or the insured’s vehicle to recover uninsured motorist benefits. American Family counters that uninsured motorist coverage does not apply to single-vehicle accidents because the relevant statutes and cases contemplate the negligence of another driver and physical contact with another vehicle. American Family makes no persuasive argument for requiring physical contact between two vehicles to recover uninsured motorist benefits. We agree with the LoMastros; in so doing, we clarify that the “physical contact” requirement in NRS 690B.020(3)(f)(l) applies only to hit-and-run accidents or those involving unidentified motorists.
 

 All policies of automobile liability insurance in Nevada must offer uninsured and underinsured motorist coverage in an amount equal to the bodily injury coverage of the policy.
 
 [31]
 
 An insurance policy may offer greater coverage, but it will be construed as offering at least the coverage required under NRS 690B.020.
 
 [32]
 
 The LoMastros’ policy with American Family provided:
 

 We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the uninsured motor vehicle.
 

 The policy defined “insured person” as “[y]ou or a relative” and “uninsured motor vehicle” as:
 

 
 *1072
 
 [A] motor vehicle which is:
 

 a. Not insured by a bodily injury liability bond or policy at the time of the accident.
 

 c. A hit-and-run vehicle whose operator or owner is unknown and which causes bodily injury to you or a relative. Physical contact with a hit-and-run motor vehicle is required.
 

 The policy is in accord with NRS 690B.020, which requires coverage “for bodily injury . . . resulting from the ownership, maintenance or use of the uninsured . . . motor vehicle,”
 
 [33]
 
 and defines “uninsured motor vehicle” as including “a motor vehicle . . . [for] which there is no liability insurance for bodily injury or bond applicable at the time of the accident.”
 
 [34]
 

 The parties do not dispute that Leach’s car was uninsured or that Matthew’s death resulted from the use of the car. American Family instead argues, and the district court concluded, that the statutory and policy definitions of uninsured motor vehicle excluded Leach’s car. American Family asserts that this court should interpret the LoMastros’ policy and Nevada law to require physical contact between an insured or an insured’s vehicle and an uninsured vehicle before coverage is invoked. American Family’s argument is based primarily on the statutory language of NRS 687B.145 and NRS 690B.020 and two cases,
 
 Kern
 
 v.
 
 Nevada Insurance
 
 Guaranty
 
 [35]
 
 and
 
 Burton
 
 v.
 
 State Farm Mutual Automobile Insurance
 
 Co.
 
 [36]
 

 American Family argues that the language of NRS 687B. 145(2) contemplates the involvement of a second motor vehicle and thus uninsured motorist benefits should not cover single-vehicle accidents. NRS 687B. 145(2) requires automobile insurance policies in Nevada to offer uninsured motorist coverage. Specifically, this statute requires that an uninsured and underinsured motorist policy
 

 include a provision which enables the insured to recover up to the limits of his own coverage any amount of damages for bodily injury from his insurer which he is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of the coverage for bodily injury carried by that owner or operator.
 

 
 *1073
 
 American Family argues that when the Legislature used the phrase “other vehicle,” it contemplated the involvement of two cars in accidents giving rise to claims for uninsured or underinsured motorist benefits. American Family fails to consider that “other vehicle” could refer to a vehicle other than the one for which a policy is being issued, without requiring a collision between the insured car and the uninsured. When a statute “is capable of being understood in two or more senses by reasonably informed persons, the statute is ambiguous.”
 
 [37]
 
 Because NRS 687B. 145(2) has two reasonable interpretations, we interpret it according to the Legislature’s intent.
 
 [38]
 

 We have previously stated that the clear intent of the Legislature in requiring insurance companies to offer uninsured motorist coverage was to compensate an injured insured for injuries caused by the negligence of the owner or operator of an uninsured or underinsured motor vehicle.
 
 [39]
 
 In light of that legislative intent, we have also stated that “we . . . construe our [uninsured and under-insured motorist] statutes in favor of recovery by the insured.”
 
 [40]
 
 Limiting recovery of uninsured motorist benefits to accidents involving more than one vehicle is not required by the plain language of NRS 687B. 145(2) and would unnecessarily limit an insured’s ability to recover for his or her injuries in contravention of the legislative intent. We therefore decline to read NRS 687B. 145(2) as prohibiting recovery of uninsured motorist benefits for single-vehicle accidents.
 

 American Family next argues that the “physical contact” requirement in NRS 690B.020(3)(f) applies to all accidents for which recovery of uninsured motorist benefits are sought. NRS 690B.020(1) requires insurance companies to offer coverage “for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use
 
 *1074
 
 of the uninsured or hit-and-run motor vehicle.” Then, NRS 690B.020(3) offers several definitions of an uninsured motorist that do not require physical contact and only one that does.
 
 [41]
 
 The definition contained in NRS 690B.020(3)(f) states, in pertinent part,
 

 The owner or operator of which is unknown or after reasonable diligence cannot be found if:
 

 (1) The bodily injury or death has resulted from physical contact of the automobile with the named insured or the person claiming under him or with an automobile which the named insured or such a person is occupying.
 
 [42]
 

 By offering several alternate definitions of ‘ ‘uninsured motorist’ ’ separated by the word “or,” and requiring physical contact to satisfy only one of those definitions, the plain language of NRS 690B. 020(3) indicates that the “physical contact” requirement applies only to accidents involving unidentified or hit-and-run motorists. NRS 690B.020 does not require physical contact between two vehicles for recovery of uninsured motorist benefits.
 

 
 *1075
 
 In regard to American Family’s argument based on this court’s analysis in
 
 Kern,
 
 in that case we specifically addressed NRS 690B.020(3)(f)(l), which requires physical contact between a motorist and an unidentified vehicle for that vehicle to meet one of the statutory definitions of “uninsured motor vehicle.”
 
 [43]
 
 We discussed the policy of the “physical contact” requirement, stating, “[m]ost jurisdictions recognize that the purpose behind the ‘physical contact’ requirement is to prevent fraudulent claims where the insured loses control of his or her car and claims a ‘phantom driver’ forced him or her off the road.”
 
 [44]
 
 Thus, when Kern lost control of her car because of a slippery, oil-like substance on the road, we determined that she was not entitled to uninsured motorist benefits because she had not had physical contact with an uninsured motorist and “fault ha[d] not been properly attributed to any entity.”
 
 [45]
 
 The purpose of the physical contact requirement, as clarified in
 
 Kern,
 

 [46]
 

 only applies in situations where the party at fault is unknown or unidentifiable. Thus, in a case like this one, where the identity of the alleged tortfeasor is known, the physical contact requirement serves no purpose and is thus inapplicable.
 

 American Family next argues that in
 
 Burton
 
 the federal district court applying Texas law required physical contact to recover uninsured motorist benefits. In
 
 Burton,
 
 the court considered an accident in which two family members were injured in a single-car accident caused by a third family member’s negligent driving.
 
 [47]
 
 The court held that the insurance company had properly denied the claims for several reasons.
 
 [48]
 
 After determining that no liability or uninsured motorist coverage was available because of various policy exclusions, the court then addressed the lack of physical contact with an uninsured vehicle.
 
 [49]
 
 By addressing the physical contact issue, the court apparently meant to preclude any other claim for uninsured motorist benefits based on a phantom driver not previously alleged. Insofar as this is true, the analysis in
 
 Burton
 
 regarding physical contact is dicta. The analysis does not suggest
 
 that the
 
 court intended to state a “physical contact” requirement for all uninsured motorist claims. Even if it did, that court’s dicta does not persuade us to adopt such a requirement in Nevada.
 

 
 *1076
 
 By focusing on cases from other jurisdictions considering the “physical contact” requirement, which is only present here in the hit-and-run provisions of the statute and the LoMastros’ policy, American Family claims that a majority of states have held that uninsured motorist benefits are unavailable in single-vehicle accidents. We have never reversed an award of uninsured or underinsured motorist benefits arising from a single-car accident based solely on the fact that there was no physical contact with another car.
 
 [50]
 
 Furthermore, whether an accident involves one vehicle or more than one vehicle does not impact courts’ determinations regarding whether a claimant’s bodily injury was caused by an accident that arose from “the ownership, maintenance or use of the uninsured . . . motor vehicle.”
 
 [51]
 
 Clearly, the “physical contact” requirement only applies to cases that allege the negligence of an unidentified or hit-and-run driver, and uninsured motorist benefits should be available when an insured person is legally entitled to recover from the owner or operator of a vehicle that meets one of NRS 690B.020(3)’s statutory definitions for uninsured motor vehicle. Therefore, it was not necessary for the district court to
 
 *1077
 
 apply the physical contact requirement in this case,
 
 [52]
 
 and we reverse the district court’s summary judgment.
 

 The LoMastros also assert that summary judgment was improper on the claims they made against American Family for bad faith denial of their insurance claim and violations of the Unfair Claims Practices Act.
 
 [53]
 
 The LoMastros could recover for bad faith if they could prove that American Family refused their claim “ ‘without proper cause’ ” and that the claim was “for a loss covered by the policy.”
 
 [54]
 
 The district court found that the LoMastros’ loss was not covered by their policy and, based on that erroneous finding, granted summary judgment on the bad faith claim. Because we reverse summary judgment on the physical contact issue, a genuine issue of material fact remains as to whether American Family had a reasonable basis to deny the LoMastros’ claim, and we reverse summary judgment on the bad faith claim as well.
 

 The district court also erred by granting summary judgment to American Family on the LoMastros’ claim for violations of the
 
 *1078
 
 Unfair Claims Practices Act. NRS 686A.310(1) prohibits the following as unfair practices:
 

 (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.
 

 (d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.
 

 (n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured’s claim and the applicable law, for the denial of his claim or for an offer to settle or compromise his claim.
 

 Based on the facts the LoMastros alleged — that American Family did not promptly respond to the LoMastros’ communications, that the ten-month period in which it investigated the claim without affirming or denying coverage was unreasonable, and that it did not provide sufficient explanation for denying the claim — there is a genuine issue of material fact as to whether American Family violated the Act, and summary judgment was improper. Therefore, we reverse the district court’s grant of summary judgment in favor of American Family and remand this matter to the district court for further proceedings.
 

 CONCLUSION
 

 We affirm the district court’s order that American Family was bound by the entry of default against Leach because entry of default binds an insurance company intervenor as to the liability of an uninsured motorist defendant if the insurance company had notice of the litigation and the plaintiff’s intent to seek entry of default, but failed to intervene. On remand, American Family may contest only the amount of damages in the claims against Leach unless it successfully moves to set aside the entry of default.
 

 The district court erred when it granted summary judgment to American Family. The law does not, in all cases, require physical contact between at least two cars for recovery of uninsured motorist benefits; therefore, we reverse the district court’s grant of summary judgment as a matter of law. Because reversal of summary judgment on that matter creates a genuine issue of material fact regarding the LoMastros’ allegation that American Family denied
 
 *1079
 
 their claim in bad faith, we necessarily reverse the district court’s grant of summary judgment on that claim. The district court further erred when it granted summary judgment for American Family on the LoMastros’ claims of violation of the Unfair Claims Practices Act because genuine issues of material fact exist as to the reasonableness of American Family’s investigation and the manner in which it denied the LoMastros’ claim. Therefore, we reverse the district court’s summary judgment to American Family on all grounds and remand the matter for further proceedings.
 
 [55]
 

 Parraguirre and Douglas, JL, concur.
 

 [1]
 

 In
 
 Allstate Insurance Co. v. Pietrosh,
 
 this court invalidated a policy exclusion that provided “no judgment against the uninsured motorist would be conclusive unless entered in an action prosecuted by the insured with the written consent of Allstate.” 85 Nev. 310, 312, 316-17, 454 P.2d 106, 108, 110-11 (1969). On appeal, although American Family correctly refrains from arguing that its similar policy provision prevents it from being bound by determinations in the litigation against Leach, we note that, as in
 
 Pietrosh,
 
 this exclusion is invalid when the insurance company had notice of the pending litigation and an opportunity to intervene.
 

 [2]
 

 American Family has filed a notice of cross-appeal from the district court’s judgment in this case, challenging the district court’s determination that it
 
 *1066
 
 could not contest Leach’s liability. But American Family is not aggrieved because the district court ultimately granted summary judgment to American Family on the claims against it.
 
 See
 
 NRAP 3A(a) (noting that any aggrieved party may appeal);
 
 Valley Bank of Nevada v. Ginsburg,
 
 110 Nev. 440, 446, 874 P.2d 729, 734 (1994) (providing that a party is aggrieved within the meaning of NRAP 3A(a) when a district court’s order adversely and substantially affects either a personal right or a right of property). Because American Family is not aggrieved, it lacks standing to appeal, and we therefore dismiss American Family’s cross-appeal.
 
 Id.
 
 Nevertheless, we will consider American Family’s arguments regarding the district court’s liability determination in the context of the LoMastros’ appeal.
 
 See Ford
 
 v.
 
 Showboat Operating Co.,
 
 110 Nev. 752, 755, 877 P.2d 546, 548 (1994) (recognizing that a party “who is not aggrieved by a judgment need not appeal from the judgment in order to raise arguments in support of the judgment not necessarily accepted by the district court”).
 

 [3]
 

 Wood v. Safeway, Inc.,
 
 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).
 

 [4]
 

 Id.
 
 at 731, 121 P.3d at 1031.
 

 [5]
 

 Id.
 

 [6]
 

 State Farm Mut. Auto. Ins.
 
 v.
 
 Wharton,
 
 88 Nev. 183, 187 n.7, 495 P.2d 359, 362 n.7 (1972) (citing
 
 State Farm Mut. Auto.
 
 v.
 
 Christensen,
 
 88 Nev. 160, 494 P.2d 552 (1972);
 
 Pietrosh,
 
 85 Nev. 310, 454 P.2d 106)).
 

 [7]
 

 See
 
 46A C.J.S.
 
 Insurance
 
 § 2329 (2007) (“[An insurance company that intervenes] will be a named party to the action, entitled to be treated as a joint tortfeasor with the named defendant, and thus can raise any defenses available to the uninsured motorist.”) (internal citations omitted);
 
 accord Pietrosh,
 
 85 Nev. at 316, 454 P.2d at 110.
 

 [8]
 

 See Frow v. De La Vega,
 
 82 U.S. 552, 554 (1872) (holding that default judgment may not be entered against a defaulting codefendant until after the merits have been decided against the answering codefendants);
 
 State Farm Mut. Auto. Ins. Co. v. Clark,
 
 544 So. 2d 1141, 1142 (Fla. Dist. Ct. App. 1989) (“ ‘The default of one defendant, although an admission by him of the allegations of the complaint, does not operate as an admission of such allegations as against a contesting co-defendant.’” (quoting
 
 Dade County
 
 v.
 
 Lambert,
 
 334 So. 2d 844, 847 (Fla. Dist. Ct. App. 1976)).
 
 See also
 
 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
 
 Federal Practice and Procedure: Civil
 
 § 2690 (3d ed. 1998) (“[A]n entry of default against one jointly liable defendant among several is not a final judgment, and hence, is not appealable. The claim must be disposed of as to all defendants before a final appealable judgment can be entered. However, when one party defaults while the action is still pending as to the others and the liability is several, relief may be available against each defendant and a judgment may be entered against the defaulting party. The liability of one defendant can be adjudicated without affecting the rights of others and a final and appealable decree may be entered against the one found to be liable.”) (internal citation omitted).
 

 [9]
 

 Frow,
 
 82 U.S. at 554.
 

 [10]
 

 Galbreath
 
 v.
 
 Metropolitan Trust Co.,
 
 134 F.2d 569, 570 (10th Cir. 1943).
 
 See also Arizona v. California,
 
 460 U.S. 605, 615 (1983) (“[P]ermission to intervene does not carry with it the right to relitigate matters already determined in the case, unless those matters would otherwise be subject to reconsideration.’ ’).
 

 [11]
 

 State of Idaho
 
 v.
 
 Freeman,
 
 507 F. Supp. 706, 712 (D. Idaho 1981) (quoting 3B
 
 Moore’s Federal Practice
 
 ¶ 24.16(5) (1980)).
 

 [12]
 

 We note that after the district court granted summary judgment to American Family, it entered default judgment against Leach. Neither party raises any issues regarding the default judgment on appeal, thus, we address only the entry of default and leave it to the district court to determine the effect of the later default judgment on remand.
 

 [13]
 

 NRCP 55(a).
 

 [14]
 

 See Ewing v. Jennings,
 
 15 Nev. 379, 382 (1880) (holding that defaulting is an admission of all averments in the complaint);
 
 Nevada Civil Practice Manual
 
 § 10.04[5] (Matthew Bender & Company, Inc. ed., 5th ed. 2007) (“If the defendant is in default, then all well-pleaded facts will be deemed admitted, except as to items of damages. Thus, liability will be assumed and the inquiry generally will focus on proof of the amount of damages.”).
 

 [15]
 

 Nevada Civil Practice Manual, supra
 
 note 14, § 10.04[5],
 

 [16]
 

 In
 
 Aetna Life & Casualty v. Rowan,
 
 this court dismissed an appeal from denial of a motion to intervene made after default had been entered. 107 Nev. 362, 362-63, 812 P.2d 350, 350-51 (1991). The insurance company in that case, like American Family here, did not move to intervene until after default had been entered against the uninsured motorist; however, the district court denied the insurance company’s motions to intervene and set aside default.
 
 Id.
 
 at 362, 812 P.2d at 350. This court dismissed the appeal, determining that neither denial of a motion to intervene nor denial of a motion to set aside entry of default is a final appealable order.
 
 Id.
 
 at 362-63, 812 P.2d at 350-51.
 

 [17]
 

 See Bliss
 
 v.
 
 Wiatrowski,
 
 724 A.2d 1264, 1269 (Md. Ct. Spec. App. 1999) (“[I]f an insurer can be bound by a default judgment order entered against an uninsured motorist, then the insurer should have the power to move to set aside the order of default and the default judgment, as its liability exposure hinges on the uninsured motorist’s culpability.”).
 

 [18]
 

 85 Nev. 310, 454 P.2d 106 (1969).
 

 [19]
 

 Id.
 
 at 316, 454 P.2d at 111.
 

 [20]
 

 See id.
 

 [21]
 

 Id.
 
 at 315-16, 454 P.2d at 110.
 

 [22]
 

 Id.
 
 at 316-17, 454 P.2d at 110-11.
 

 [23]
 

 Id.
 

 [24]
 

 88 Nev. 160, 162-63, 494 P.2d 552, 553 (1972).
 

 [25]
 

 72 Nev. 97, 295 P.2d 399 (1956).
 

 [26]
 

 Id.
 
 at 98-99, 295 P.2d at 399.
 

 [27]
 

 109 Nev. 553, 557, 853 P.2d 1266, 1268 (1993).
 

 [28]
 

 Id.
 
 at 558, 853 P.2d at 1269.
 

 [29]
 

 We note that NRS 12.130 provides that intervention is appropriate before trial and NRCP 24 allows intervention if it is timely. Our cases generally reflect that intervention is timely if the procedural posture of the action allows the intervenor to protect its interest.
 
 Compare Dangberg Holdings v. Douglas Co.,
 
 115 Nev. 129, 139-42, 978 P.2d 311, 317-19 (1999) (holding that intervention prior to a settlement agreement was timely),
 
 with Lopez,
 
 109 Nev. at 557, 853 P.2d at 1268 (determining that intervention after entry of judgment on a settlement agreement was not timely). After entry of default, an insurance company has an interest to protect in contesting the amount of damages awarded and therefore allowing intervention may be appropriate even though liability has been determined.
 
 But see Stern & Goodman Inv. Co. v. Danziger,
 
 274 P. 748, 750 (Cal. 1929) (equating entry of default with trial because it determines all issues of liability and therefore affirming denial of motion to intervene).
 

 [30]
 

 See
 
 Lioce
 
 v.
 
 Cohen,
 
 124 Nev. 1, 24 n.42, 174 P.3d 970, 985 n.42 (2008).
 

 [31]
 

 NRS 687B.145; NRS 690B.020.
 

 [32]
 

 See State Farm Mut. Auto. Ins. v. Hinkel,
 
 87 Nev. 478, 481, 488 P.2d 1151, 1153 (1971). In
 
 Hinkel,
 
 this court cites to NRS 693.115.
 
 Id.
 
 NRS 693.115 was repealed in 1971 and re-enacted with minor modifications as NRS 690B.020.
 
 See
 
 1971 Nev. Stat., ch. 660, §§ 538, 916, at 1777-78, 1930.
 

 [33]
 

 NRS 690B.020(1).
 

 [34]
 

 NRS 690B.020(3)(b).
 

 [35]
 

 109 Nev. 752, 856 P.2d 1390 (1993).
 

 [36]
 

 869 F. Supp. 480 (S.D. Tex. 1994).
 

 [37]
 

 McKay
 
 v.
 
 Bd. of Supervisors,
 
 102 Nev. 644, 649, 730 P.2d 438, 442 (1986).
 

 [38]
 

 State, Div. of Insurance v. State Farm,
 
 116 Nev. 290, 294, 995 P.2d 482, 485 (2000).
 

 [39]
 

 Allstate Insurance Co.
 
 v.
 
 Pilosof,
 
 110 Nev. 311, 314, 871 P.2d 351, 353-54 (1994) (“Uninsured motorist coverage is first-party coverage that fills the void left by uninsured parties who are liable for injuries resulting from vehicular accidents.”);
 
 State Farm Mut. Auto. Ins. v. Hinkel,
 
 87 Nev. 478, 482, 488 P.2d 1151, 1153 (1971) (“It is [the] clear intent of the legislature that NRS 693.115(1) requires protection against the peril of injury caused by an uninsured motorist to a ‘person insured.’ The legislative purpose in creating compulsory uninsured motorist coverage was to give needed relief to injured parties through insurance paid for by the insured.”).
 

 [40]
 

 Allstate Ins. Co. v. Maglish,
 
 94 Nev. 699, 702, 586 P.2d 313, 314 (1978).
 

 [41]
 

 NRS 690B.020(3) provides:
 

 For the purposes of this section, the term “uninsured motor vehicle” means a motor vehicle:
 

 (a) With respect to which there is not available at the Department of Motor Vehicles evidence of financial responsibility as required by chapter 485 of NRS;
 

 (b) With respect to the ownership, maintenance or use of which there is no liability insurance for bodily injury or bond applicable at the time of the accident, or, to the extent of such deficiency, any liability insurance for bodily injury or bond in force is less than the amount required by NRS 485.210;
 

 (c) With respect to the ownership, maintenance or use of which the company writing any applicable liability insurance for bodily injury or bond denies coverage or is insolvent;
 

 (d) Used without the permission of its owner if there is no liability insurance for bodily injury or bond applicable to the operator;
 

 (e) Used with the permission of its owner who has insurance which does not provide coverage for the operation of the motor vehicle by any person other than the owner if there is no liability insurance for bodily injury or bond applicable to the operator; or
 

 (f) The owner or operator of which is unknown or after reasonable diligence cannot be found if:
 

 (1) The bodily injury or death has resulted from physical contact of the automobile with the named insured or the person claiming under him or with an automobile which the named insured or such a person is occupying; and
 

 (2) The named insured or someone on his behalf has reported the accident within the time required by NRS 484.223, 484.225 or 484.227 to the police department of the city where it occurred, or if it occurred in an unincorporated area, to the sheriff of the county or to the Nevada Highway Patrol.
 

 [42]
 

 NRS 690B.020(3)(f)(1).
 

 [43]
 

 109 Nev. 752, 754, 856 P.2d 1390, 1392 (1993).
 

 [44]
 

 Id.
 
 at 755, 856 P.2d at 1392.
 

 [45]
 

 Id.
 
 at 758, 856 P.2d at 1394.
 

 [46]
 

 Id.
 
 at 755, 856 P.2d at 1392.
 

 [47]
 

 869 F. Supp. 480, 483 (1994).
 

 [48]
 

 Id.
 
 at 486-88 (determining that the liability claim was meritless because the claimants had not established that they were legally entitled to recover from the driver and that the uninsured motorist claim was meritless because the family vehicle was expressly excluded from the definition of uninsured vehicle).
 

 [49]
 

 Id.
 
 at 488.
 

 [50]
 

 See Baker v. Criterion Insurance,
 
 107 Nev. 25, 25-28, 805 P.2d 599, 599-601 (1991) (affirming a district court’s summary judgment rejecting a claim for uninsured motorist benefits arising from a single-car accident where the passenger was the owner and insured under the policy and had already recovered under the policy’s bodily injury coverage, but stating “[g]uest passengers may stack their own [uninsured/underinsured motorist] coverage with the benefits they receive from the owner’s policy, but they may not recover from the owner’s [uninsured/underinsured motorist] coverage”);
 
 United Services v. Akers,
 
 102 Nev. 598, 599-601, 729 P.2d 495, 496-97 (1986) (reversing a district court judgment awarding uninsured motorist benefits because the district court failed to allow the insurance company to offer evidence tending to prove that the injured person was not covered under the policy, without addressing the fact that it was a single-car accident);
 
 Ippolito v. Liberty Mutual,
 
 101 Nev. 376, 378-80, 705 P.2d 134, 135-37 (1985) (reversing a district court’s dismissal of a claim for uninsured motorist benefits arising from a single-car accident holding that a statute requiring the insurance company to offer uninsured motorist benefits equaling the amount of any liability coverage effectively increased the amount of uninsured motorist coverage available in the case). We note that in
 
 Ippolito,
 
 if recovery of uninsured motorist coverage required physical contact with a second uninsured vehicle, this court could have affirmed the district court’s judgment in the case as reaching the correct result on incorrect grounds.
 
 See Lioce v. Cohen,
 
 124 Nev. 1, 24 n.42, 174 P.3d 970, 985 n.42 (2008) (noting that this court will affirm a district court judgment where it reaches the correct conclusion, even if it applied the wrong reasoning).
 

 [51]
 

 NRS 690B.020(1).
 
 See State Farm Mut. Auto. Ins. Co. v. Fox,
 
 541 So. 2d 1070, 1071-72 (Ala. 1989) (affirming a trial court’s award of stacked under-insured motorist benefits for death from a single-car accident);
 
 Malloy
 
 v.
 
 Vanwinkle,
 
 662 So. 2d 96, 102-03 (La. Ct. App. 1995) (affirming a trial court’s award of uninsured motorist benefits for injury resulting from a single-car accident).
 

 [52]
 

 Because it was not briefed, and is therefore not properly before this court, we do not address whether uninsured motorist benefits are available when the insured is legally entitled to recover from the owner or operator of an uninsured vehicle based solely on negligent entrustment of the vehicle to the insured. Other courts that have addressed this issue suggest that uninsured motorist benefits would be available.
 
 See Arnold v. American Family Mut. Ins. Co.,
 
 987 S.W.2d 537, 541 (Mo. Ct. App. 1999) (“[f]n a situation such as this, where the owner is sued for his own separate negligence in entrusting the vehicle to another, and there is no coverage for this act, then the uninsured motorist provisions of the injured person’s policy apply and coverage will be required if the other requirements for coverage are met.”);
 
 Le v. Vaknin,
 
 722 N.W.2d, 412, 414-16 (Iowa 2006) (determining that uninsured motorist coverage was not available to pay for damages to which the insured was entitled from the uninsured person who negligently entrusted the car to the driver-claimant because the person who negligently entrusted the car was neither the owner nor operator of the car and the coverage was limited to the negligence of the owner or operator).
 

 [53]
 

 The LoMastros argue that the district court erred by entering summary judgment for American Family as intervenor because it only moved for summary judgment as a defendant. No authority requires a party to refer to itself by a particular title to entitle it to summary judgment. The content of the summary judgment motion reveals that American Family sought summary judgment on all of the LoMastros’ claims. The title under which a party moves for summary judgment is immaterial to the merits of the motion or what relief the district court may grant.
 

 [54]
 

 Pemberton
 
 v.
 
 Farmers Ins. Exchange,
 
 109 Nev. 789, 793, 858 P.2d 380, 382 (1993) (quoting
 
 United States Fidelity
 
 v.
 
 Peterson,
 
 91 Nev. 617, 620, 540 P.2d 1070, 1071 (1975)).
 

 [55]
 

 The LoMastros have appealed the district court’s order denying their motion to amend the judgment under NRCP 59(e) or to set aside the judgments under NRCP 60(b). To the extent that the district court’s order denied their NRCP 59(e) motion to alter or amend the judgment, it is not an appealable order.
 
 See Edwards
 
 v.
 
 Emperor’s Garden Rest.,
 
 122 Nev. 317, 323 n.4, 130 P.3d 1280, 1284 n.4 (2006). And in light of this opinion, the LoMastros’ appeal from the district court’s order denying their NRCP 60(b) motion to set aside the judgments is dismissed as moot.